AMBRO, Circuit Judge, dissenting
 

 The Federal Government is typically immune from suit. The Federal Tort Claims Act,
 
 28 U.S.C. § 1346
 
 (b), waives the Government's immunity for certain torts committed by Government employees.
 
 28 U.S.C. § 2680
 
 (h) does so for specific intentional torts committed by "investigative or law enforcement officers," which it defines as "any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law."
 

 Nadine Pellegrino relies on § 2680(h) to recover against Transportation Security Officers ("TSOs") who, she alleges, detained her, damaged her property, and fabricated charges against her. Pellegrino contends TSOs fit fully within its purview because they are legally empowered to conduct searches of all passengers and property before boarding commercial flights originating in the United States. Consequently, she argues her intentional-tort claims should proceed to trial.
 

 Although there is scant textual basis for denying Pellegrino's claims, my colleagues hold that TSOs are immune from suit because they deem § 2680(h) 's waiver of immunity to include only criminal law enforcement officers. They equate airport screenings with routine administrative inspections, even though the former involve rigorous and thorough searches that often extend to an individual's physical person. Their opinion leaves several plaintiffs without a remedy, even if a TSO assaults them, wrongfully detains them, or fabricates criminal charges against them. I do not believe this is what Congress intended when it drafted § 2680(h) or pertinent Transportation Security Administration ("TSA") statutes.
 

 While I agree with my colleagues' reasoning on other points, I do not agree that § 2680(h) solely refers to criminal law enforcement officers. Instead, it applies to "any officer" who has legal authority to "execute searches ... for violations of Federal law." TSOs may by law execute
 searches, as they must screen "all passengers and property, including United States mail, cargo, carry-on and checked baggage, and other articles, that will be carried aboard a passenger aircraft operated by an air carrier or foreign air carrier in air transportation or intrastate air transportation."
 
 49 U.S.C. § 44901
 
 (a). The statute and its implementing regulations further define screening to include "a
 
 physical search
 
 together with manifest verification,"
 

 id.
 

 § 44901(g)(5) (emphasis added), and "the inspection of individuals, accessible property, checked baggage, and cargo,"
 
 49 C.F.R. § 1546.207
 
 (a). Hence TSOs are covered by § 2680(h) 's definition of investigative or law enforcement officer based on its explicit language.
 

 Even if we assume the definition is ambiguous, the result is the same. TSOs are liable under § 2680(h) because the Supreme Court has instructed us to interpret the Federal Tort Claims Act broadly in favor of waiving the Government's immunity against suit.
 
 See
 

 Dolan v. U.S. Postal Serv.
 
 ,
 
 546 U.S. 481
 
 , 491-92,
 
 126 S.Ct. 1252
 
 ,
 
 163 L.Ed.2d 1079
 
 (2006). Thus I would reverse the District Court's ruling as to § 2680(h) and allow Pellegrino's false arrest, false imprisonment, and malicious prosecution claims to proceed to trial.
 

 I. Background Matters
 

 A. Factual Background
 

 For ease of reference, I restate the facts as I understand them. On July 29, 2006, Pellegrino and her husband Harry Waldman arrived at the Philadelphia International Airport to board a flight home to Florida. After she passed through the security checkpoint, Pellegrino was randomly selected for additional screening. TSO Thomas Clemmons began examining her bags, but she stopped him, demanding a private screening.
 

 TSA employees subsequently led her to a private screening room, where TSOs Nuyriah Abdul-Malik, Laura Labbee, and Denise Kissinger conducted the screening. Kissinger swabbed the front and back of Pellegrino's shirt, and Abdul-Malik screened her luggage. According to Pellegrino, Abdul-Malik's inspection was unduly rough because she allegedly counted Pellegrino's coins and currency, rifled through her papers, examined her cell phone data, read the front and back of her membership and credit cards, and opened and smelled her cosmetics, mints, and hand sanitizer. She claims Abdul-Malik did not close the lids to various containers the latter opened, causing the previously enclosed items to spill inside her bags and damage her property. Pellegrino further contends Abdul-Malik punched, jammed, and forced her belongings back into her luggage, damaging it, her jewelry, and her eyeglasses in the process.
 

 At that point in the search, Pellegrino informed Labbee, the supervisor at the checkpoint, that she intended to report the TSOs' conduct to TSA superiors. After Abdul-Malik had forcibly closed her luggage, Pellegrino also demanded to know "what is going on here[;] both of you are behaving like bitches." In response to Pellegrino's comments, Abdul-Malik asked Labbee to call the police, but the TSOs did not summon law enforcement to arrest Pellegrino at that time. Instead, they continued searching her luggage. Kissinger swabbed various shoes and clothing in Pellegrino's bag, and Abdul-Malik searched the contents of the bag. After they finished, Kissinger and Abdul-Malik told Pellegrino that the search was over and that she could leave the private screening room. She proceeded to move her belongings to a search table outside of the private screening room. She first tossed her shoes from the doorway of the screening room onto the floor of the security checkpoint
 area after checking that no one else was in her surroundings. She also made multiple trips from the private screening room to the search table because she had three pieces of luggage. On her first trip, she carried her largest bag out of the private screening room. Labbee contends Pellegrino struck her in the stomach with the bottom of the bag as she was moving the bag to the search table. When Pellegrino returned to retrieve a smaller bag, Abdul-Malik allegedly blocked her access to it, forcing her to crawl under a table to retrieve the bag. When Pellegrino did so, it tipped over, striking the ground with a loud noise. Abdul-Malik claims Pellegrino struck her in the leg while she was collecting the bag. She denies striking either Abdul-Malik or Labbee with her luggage and alleges she heard both TSOs say to each other, "You saw her hit me, didn't you?"
 

 After Pellegrino had retrieved her luggage, Labbee and Abdul-Malik walked to the supervisor's station to press charges against her and to summon local police. Labbee directed Pellegrino to stay at the security checkpoint until the police arrived. Although Pellegrino requested that the TSA official in charge of the airport be called to the checkpoint, her request went unheeded.
 
 [1]
 

 When the police arrived, Pellegrino was frisked, handcuffed, and arrested. Labbee confiscated her driver's license and, along with Abdul-Malik, swore out criminal complaints against her. Kissinger offered a witness statement corroborating the allegation that Pellegrino struck Labbee in the leg with her bag. The police escorted Pellegrino out of the airport in plain view of other passengers. She was held for roughly 18 hours and released after her husband posted approximately $400 in bail.
 

 The police incident report stated Pellegrino struck both Labbee and Abdul-Malik with her bags and shoes that she tossed out of the private screening room. It also noted both TSOs suffered from leg pain and a stomach bruise as a result of Pellegrino's actions.
 

 Did things calm down? Hardly. The Philadelphia District Attorney's Office charged Pellegrino with ten criminal violations: two counts of felony aggravated assault,
 
 see
 

 18 Pa. Cons. Stat. § 2702
 
 ; two counts of possession of an instrument of a crime (the suitcases allegedly used to hit the TSOs),
 
 see
 
 id.
 

 § 907; two counts of making terroristic threats,
 
 see
 
 id.
 

 § 2706; two counts of simple assault,
 
 see
 
 id.
 

 § 2701; and two counts of recklessly endangering another person,
 
 see
 
 id.
 

 § 2705. (Someone must have taken creative charging and aced the test; either that or there was a lot of lawyer-lounge temporizing.)
 

 On October 25, 2006, Pellegrino attended a preliminary hearing in her criminal case. The presiding judge dismissed several charges, and the District Attorney abandoned other charges, with the exception of two counts of simple assault and two counts of possession of an instrument of a crime (the suitcases allegedly used to hit the TSOs). Those remaining charges proceeded to trial on March 28, 2008, in Philadelphia Municipal Court. The judge entered not guilty verdicts as to each charge based on insufficiency of the evidence put in by the TSA: it failed to produce video surveillance recordings of the incident;
 
 [2]
 

 Abdul-Malik failed to appear in court; and Labbee's testimony was internally inconsistent and contradictory on key points.
 

 B. Procedural Background
 

 After criminal proceedings concluded, Pellegrino submitted a claim to the TSA describing the TSOs' conduct during and following the July 29th incident at the airport. The TSA denied the claim, and Pellegrino turned to federal court for relief. She alleged numerous constitutional and statutory violations against the TSA, Abdul-Malik, Labbee, Kissinger, and other unnamed TSOs. The District Court dismissed most of her claims except for property damage, false arrest, false imprisonment, and malicious prosecution under the Federal Tort Claims Act and her
 
 Bivens
 
 claims for malicious prosecution under the First and Fourth Amendments. During summary judgment, the Court ruled in favor of the TSA on all of her remaining claims except for the property damage claim, which the parties later settled.
 

 Although Pellegrino appeals the District Court's rulings on all of her claims, I focus on those for false arrest, false imprisonment, and malicious prosecution under the Federal Tort Claims Act. The Court held it lacked jurisdiction over those claims because they do not fall within § 2680(h) 's proviso, which waives sovereign immunity for certain intentional torts committed by investigative or law enforcement officers. Although the proviso defines "investigative or law enforcement officer" as "any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law,"
 
 28 U.S.C. § 2680
 
 (h), the District Court stated the phrase "searches ... for violations of Federal law" was "ambiguous,"
 
 Pellegrino v. Transp. Sec. Admin.
 
 , No. 09-5505,
 
 2014 WL 1489939
 
 , at *5 (E.D. Pa. Apr. 16, 2014).
 

 Because "[t]he relevant statutory scheme shed[ ] little light on how broadly 'search' is to be defined," the Court turned to legislative history.
 
 Id.
 
 at *6. In its view, § 2680(h) 's legislative history "strongly suggests that the ... proviso was enacted as a response to specific eg[ ]regious behavior during raids conducted by federal law enforcement officers ... and was not intended to be expansive enough to cover airport security screeners."
 
 Id.
 
 at *7. As such, it denied relief to Pellegrino on her false arrest, false imprisonment, and malicious prosecution claims. She appeals, challenging, among other things, the District Court's determination that it lacked jurisdiction over her claims.
 

 C. Statutory Background
 

 As noted, the Federal Tort Claims Act waives sovereign immunity for certain torts committed by federal employees. "[Its] provisions are contained in two areas of the United States Code."
 
 Simmons v. Himmelreich
 
 , --- U.S. ----,
 
 136 S.Ct. 1843
 
 , 1846,
 
 195 L.Ed.2d 106
 
 (2016). The first, "
 
 28 U.S.C. § 1346
 
 (b), gives federal district courts exclusive jurisdiction over tort claims against the United States for the acts of its employees '[s]ubject to the provisions of chapter 171' of Title 28."
 

 Id.
 

 (footnote omitted) (quoting
 
 28 U.S.C. § 1346
 
 (b) ). "Chapter 171, in turn, ... comprises the remaining provisions of the [Act]," including § 2680, which contains exceptions to the Act's broad waiver of immunity.
 

 Id.
 

 Of all the exceptions listed in § 2680, subsection h is most pertinent to this appeal. In full it states:
 

 The provisions of ... section 1346(b) [that is, the waiver of immunity] of this title shall not apply to-...
 

 (h) Any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights:
 
 Provided
 
 , That, with regard to acts or omissions of investigative or law enforcement officers of the United States Government, the provisions of this chapter and section 1346(b) of this title shall apply to any claim arising, on or after the date of the enactment of this proviso, out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution. For the purpose of this subsection, "investigative or law enforcement officer" means any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law.
 

 28 U.S.C. § 2680
 
 (h). The first part of § 2680(h) extends sovereign immunity for any claim traced to "assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights."
 

 Id.
 

 As noted, it is an exception to the Federal Tort Claims Act, and the Government has the burden of proving it applies.
 
 See
 

 S.R.P. ex rel. Abunabba v. United States
 
 ,
 
 676 F.3d 329
 
 , 333 n.2 (3d Cir. 2012) (stating exceptions to the Federal Tort Claims Act are "analogous to ... affirmative defense[s]");
 
 see also
 

 Bunch v. United States
 
 ,
 
 880 F.3d 938
 
 , 941 (7th Cir. 2018) (Wood, C.J.) ("The burden ... shift[s] to the [G]overnment to support its affirmative defense that the exception ... for intentional torts applies and is not vitiated by the ... proviso.").
 

 The second part of § 2680(h) is a "proviso" and an exception to the exception, as it reasserts the Federal Tort Claims Act's waiver of sovereign immunity when certain intentional torts are committed by "investigative or law enforcement officers."
 
 28 U.S.C. § 2680
 
 (h). Importantly, it also contains its own definition of "investigative or law enforcement officer" that we "must follow ... even if it varies from that term's ordinary meaning."
 
 Stenberg v. Carhart
 
 ,
 
 530 U.S. 914
 
 , 942,
 
 120 S.Ct. 2597
 
 ,
 
 147 L.Ed.2d 743
 
 (2000).
 

 II. TSOs are investigative or law enforcement officers under § 2680(h).
 

 Relying on § 2680(h) 's text, Pellegrino argues TSOs are "investigative or law enforcement officers" because they are legally empowered to execute searches for violations of federal law. The Government responds that the proviso encompasses only those who exercise traditional law enforcement functions. Asserting that "Congress ... did not empower [TSOs] with law enforcement authority," the Government contends TSOs do not fall within its carve-out from immunity. Gov't Suppl. Br. at 11.
 

 Neither side disputes that TSOs conduct administrative searches.
 
 See
 

 United States v. Hartwell
 
 ,
 
 436 F.3d 174
 
 , 178 (3d Cir. 2006) ("[The appellant's] search at the airport checkpoint was justified by the administrative search doctrine."). Indeed, Pellegrino uses this point to argue that TSA screenings are "searches ... for violations of Federal law" under § 2680(h). In view of this argument, my colleagues characterize her position as extending to
 
 all
 
 administrative searches. According to them, her reading "would sweep into [ § 2680(h) 's] ambit large swaths of the federal workforce, producing an unprecedented
 expansion of the United States' tort liability." Majority Op. at 220.
 

 But Pellegrino's position is not that far-reaching.
 
 See
 
 Corrected Tr. of Oral Arg. at 9:1-2 (
 
 amicus
 
 counsel on behalf of Pellegrino stating we need not address whether certain regulatory searches fall within § 2680(h) 's proviso because those cases "are not before [us] today" (internal punctuation altered)), 10:13-14 (
 
 amicus
 
 counsel stating the issue of other regulatory searches is not "before [us] right now"). Instead of directing her arguments to all administrative searches, Pellegrino asks us to resolve whether TSOs are investigative or law enforcement officers under § 2680(h). She notes that TSA screenings are more expansive than traditional administrative inspections, as they extend to the general public and often involve searches of an individual's physical person.
 
 See
 
 Suppl. Reply Br. at 13-14. In light of these differences, she claims TSA screenings fall within the ambit of § 2680(h).
 

 I agree that TSA screenings are searches under § 2680(h) and that TSOs are "investigative or law enforcement officers" as defined by the proviso. The plain text of the statutory scheme supports this outcome. And even if there were ambiguity here, we must construe it in Pellegrino's favor. Thus her false arrest, false imprisonment, and malicious prosecution claims should survive summary judgment and proceed to trial.
 

 A. TSOs execute searches for violations of federal law.
 

 As noted, TSOs may qualify as investigative or law enforcement officers if they "execute searches ... for violations of Federal law."
 
 28 U.S.C. § 2680
 
 (h). To determine whether TSOs execute searches, I begin with the Aviation and Transportation Security Act (the "Transportation Security Act"). In pertinent part, it requires TSOs to screen "all passengers and property, including United States mail, cargo, carry-on and checked baggage, and other articles, that will be carried aboard a passenger aircraft operated by an air carrier or foreign air carrier in air transportation or intrastate air transportation."
 
 49 U.S.C. § 44901
 
 (a). It defines screening in one context as "a
 
 physical search
 
 together with manifest verification,"
 

 id.
 

 § 44901(g)(5) (emphasis added), and in other contexts as "[an] inspection of individuals, accessible property, checked baggage, and cargo,"
 
 49 C.F.R. § 1546.207
 
 (a) ;
 
 see also
 

 Bunch
 
 ,
 
 880 F.3d at 943
 
 (stating inspections are searches under the proviso).
 

 TSA screenings no doubt are "permissible under the administrative search doctrine."
 
 Hartwell
 
 ,
 
 436 F.3d at
 
 181 ;
 
 see also
 

 George v. Rehiel
 
 ,
 
 738 F.3d 562
 
 , 577 (3d Cir. 2013) ("It is not disputed that the initial airport screening to which [the Appellant] was subjected by the TSA Officials was a constitutionally permissible administrative search under the Fourth Amendment, even though it was initiated without individualized suspicion and was conducted without a warrant."). Thus, if the term "search" in § 2680(h) is synonymous with the term "search" as used in interpreting the Fourth Amendment, the inquiry likely ends here.
 

 The Government does not dispute this point. Instead, it contends TSA screenings are not searches under § 2680(h) 's proviso because they are consensual and limited in nature. It also asserts the definition of "search" under § 2680(h) is narrower than the meaning of the word "search" under the Fourth Amendment.
 

 Although we have not squarely decided this issue, the Ninth Circuit has held that airport screenings do not depend on a passenger's consent.
 
 See
 

 United States v. Aukai
 
 ,
 
 497 F.3d 955
 
 , 961 (9th Cir. 2007) (en banc). We approvingly quoted the
 Ninth Circuit's analysis in
 
 George v. Rehiel
 
 .
 
 See
 
 738 F.3d at 575 ("The constitutionality of an airport screening search ... does not depend on consent. ... [A]ll that is required is the passenger's election to attempt entry into the secured area. Under current TSA regulations and procedures, that election occurs when a prospective passenger walks through the magnetometer or places items on the conveyor belt of the x-ray machine." (internal quotation marks omitted) (quoting
 
 Aukai
 
 ,
 
 497 F.3d at
 
 961 )). Moreover, the TSA's regulations suggest TSO screenings are not consensual; any individual who does not consent to a screening may not board a flight.
 
 See
 

 49 C.F.R. § 1540.107
 
 (a) ("No individual may enter a sterile area or board an aircraft without submitting to the screening and inspection of his or her person and accessible property in accordance with the procedures being applied to control access to that area or aircraft under this subchapter.");
 

 id.
 

 § 1544.201(c)(1) ("Each aircraft operator ... must refuse to transport-(1) [a]ny individual who does not consent to a search or inspection of his or her person...."). Under a reasonable reading of our case law and the pertinent regulations, TSA screenings are not consensual searches. It follows that "consent" is not an adequate basis for concluding TSA screenings fall outside the proviso in § 2680(h).
 

 Similarly, the limited nature of TSA screenings does not put them outside the ambit of the proviso. To start, its plain language does not require searches to be limited or broad in nature. Its words also do not require searches to be directed to all violations of federal law or to traditional law enforcement functions. They simply require investigative or law enforcement officers to "execute searches ... for violations of federal law." TSO screenings are searches for violations of federal law because they are directed to illegal and prohibited items on passenger aircraft.
 
 See, e.g.
 
 ,
 
 49 U.S.C. § 46505
 
 (providing criminal penalties for "[c]arrying a weapon or explosive on an aircraft");
 
 49 C.F.R. §§ 172.101
 
 , 175.10(a) (listing "hazardous materials" that are not permitted on flights).
 
 [3]
 
 Hence the limited nature of TSA's screenings is not sufficient to exclude them from the scope of § 2680(h) 's carve-out from immunity.
 

 Finally, while the proviso provides no definition for the term "search," the lack of statutory guidance does not weigh in the Government's favor. In
 
 Terry v. Ohio
 
 , the Supreme Court stated that a search includes "a careful exploration of the outer surfaces of a person's clothing all over his or her body in an attempt to find weapons."
 
 392 U.S. 1
 
 , 16,
 
 88 S.Ct. 1868
 
 ,
 
 20 L.Ed.2d 889
 
 (1968). Congress likely knew and adopted this definition of search in enacting § 2680(h) because "it is a cardinal
 rule of statutory construction that, when Congress employs a term of art, it presumably knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it was taken. ..."
 
 [4]
 

 F.A.A. v. Cooper
 
 ,
 
 566 U.S. 284
 
 , 292,
 
 132 S.Ct. 1441
 
 ,
 
 182 L.Ed.2d 497
 
 (2012) (internal quotation marks omitted);
 
 see also
 

 Molzof v. United States
 
 ,
 
 502 U.S. 301
 
 , 307,
 
 112 S.Ct. 711
 
 ,
 
 116 L.Ed.2d 731
 
 (1992) (stating "[t]his rule carries particular force in interpreting the [Federal Tort Claims Act]").
 
 Terry
 
 's definition of "search" is also consistent with the TSA's own description of pat-down searches: "inspection[s] of the head, neck, arms, torso, legs, and feet ... [,] includ[ing] head coverings and sensitive areas such as breasts, groin, and the buttocks."
 
 [5]
 

 Security Screening
 
 , Transp. Sec. Admin., https://www.tsa.gov/travel/security-screening (last visited July 9, 2018). Thus "search" in § 2680(h) is synonymous with the term "search" as used in the Fourth Amendment, and TSA screenings are searches under § 2680(h).
 

 B. TSOs are empowered to conduct searches for violations of federal law.
 

 To repeat, § 2680(h) requires that an investigative or law enforcement officer be "empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law." The Government argues that "Congress did not grant [TSOs] ... any independent authority to conduct a search, seizure, or arrest." Gov't Suppl. Br. at 9. As such, it contends TSOs lack any legal authority to conduct airport screenings.
 

 That contention is incorrect because the Transportation Security Act empowers TSOs to conduct screenings for "flights and flight segments originating in the United States."
 
 See
 

 49 U.S.C. § 44901
 
 (a). It defines "screening" to include both "a
 
 physical search
 
 together with manifest verification,"
 

 id.
 

 § 44901(g)(5) (emphasis added), and "[an] inspection of individuals, accessible property, checked baggage, and cargo,"
 
 49 C.F.R. § 1546.207
 
 (a). Thus, per the explicit language of the statute, TSOs are empowered by law to perform searches.
 
 See
 

 Bunch
 
 ,
 
 880 F.3d at 943
 
 (stating inspections may be searches under the proviso).
 

 C. TSOs are officers of the United States.
 

 Finally, § 2680(h) requires TSOs to be "officers of the United States." Although it
 does not define the term "officer," its neighboring provisions differentiate between "officers" and "employees." For instance,
 
 28 U.S.C. § 2671
 
 defines "employee of the government" to include "officers or employees of any federal agency," indicating that officers and non-officer employees are mutually exclusive. Similarly,
 
 28 U.S.C. § 1346
 
 (b)(2) bars certain individuals from "bring[ing] a civil action against the United States or an agency, officer, or employee of the Government."
 

 The Transportation Security Act also distinguishes between officers and employees. Although it classifies TSOs as "Federal Government employee[s],"
 
 49 U.S.C. § 44901
 
 (a), it incorporates the definition of employee in
 
 5 U.S.C. § 2105
 
 , which states:
 

 For the purpose of this title, "employee[,]" ...
 
 means an officer
 
 and an individual who is-
 

 (1) appointed in the civil service by one of the following acting in an official capacity-
 

 (A) the President;
 

 (B) a Member or Members of Congress, or the Congress;
 

 (C) a member of a uniformed service;
 

 (D) an individual who is an employee under this section;
 

 (E) the head of a Government controlled corporation; or
 

 (F) an adjutant general designated by the Secretary ...;
 

 (2) engaged in the performance of a Federal function under authority of law or an Executive act; and
 

 (3) subject to the supervision of an individual named by paragraph (1) of this subsection while engaged in the performance of the duties of his position.
 

 5 U.S.C. § 2105
 
 (emphasis added). The term "officer" is further defined in
 
 5 U.S.C. § 2104
 
 , which provides:
 

 For the purpose of this title, "officer[,]" ... except as otherwise provided by this section or when specifically modified, means a justice or judge of the United States and an individual who is-
 

 (1) required by law to be appointed in the civil service by one of the following acting in an official capacity-
 

 (A) the President;
 

 (B) a court of the United States;
 

 (C) the head of an Executive agency; or
 

 (D) the Secretary of a military department;
 

 (2) engaged in the performance of a Federal function under authority of law or an Executive act;
 
 and
 

 (3) subject to the supervision of an authority named by paragraph (1) of this section, or the Judicial Conference of the United States, while engaged in the performance of the duties of his office.
 

 Id.
 

 § 2104 (emphasis added).
 
 [6]
 
 "Executive agency," defined in
 
 5 U.S.C. § 105
 
 , "means an Executive department, a Government corporation, and an independent establishment." Finally, for purposes of Title 5, an "independent establishment" is defined as "(1) an establishment in the executive branch (other than the United States Postal
 Service or the Postal Regulatory Commission) which is not an Executive department, military department, Government corporation, or part thereof, or part of an independent establishment; and (2) the Government Accountability Office."
 

 Id.
 

 § 104.
 

 At oral argument, both sides agreed that § 2104 's definition of officer is underinclusive in this context,
 
 see
 
 Corrected Tr. of Oral Arg. at 14:4-12, 38:3-4, and
 
 amicus
 
 counsel cited postal inspectors as support for this point,
 
 see
 
 id.
 

 at 14:4-12
 
 . Under a rigid reading of the text, postal inspectors would not fall within § 2680(h) 's proviso, and yet we know they are not excluded.
 
 See
 

 Banks v. Merit Sys. Prot. Bd.
 
 ,
 
 854 F.3d 1360
 
 , 1362 (Fed. Cir. 2017) ("
 
 5 U.S.C. § 104
 
 provides that the Postal Service is
 
 not
 
 an 'independent establishment'-and therefore not an 'Executive agency'-for the purpose of Title 5." (emphasis in original));
 
 Moore v. United States
 
 ,
 
 213 F.3d 705
 
 , 708 (D.C. Cir. 2000) (stating postal inspectors are "investigative or law enforcement officers" under § 2680(h) ). Similarly, Immigration and Naturalization Service ("INS" and now known as "Immigration and Customs Enforcement" or "ICE") agents are included in § 2680(h) 's proviso even though the INS is not an executive agency under
 
 5 U.S.C. § 105
 
 .
 
 See
 

 Amend v. Merit Sys. Prot. Bd.
 
 ,
 
 221 F. App'x 983
 
 , 983-84 (Fed. Cir. 2007) (per curiam) (noting the INS "was part of the Department of Justice" before "INS was abolished ... and its functions transferred to the Department of Homeland Security");
 
 Caban v. United States
 
 ,
 
 671 F.2d 1230
 
 , 1234 (2d Cir. 1982) ("By its terms, [ § 2680(h) ] waives the government's immunity to liability arising out of certain intentional torts committed by investigative and law enforcement officers such as the INS agents."). Thus
 
 5 U.S.C. § 2104
 
 cannot be a guidepost for interpreting § 2680(h), as it would lead to incongruous results.
 

 Our sister Circuits have taken a similar approach, holding that both Veterans Administration security guards and INS agents are covered by § 2680(h) 's proviso even though they are statutorily classified as employees.
 
 Compare
 

 Celestine v. United States
 
 ,
 
 841 F.2d 851
 
 , 852 (8th Cir. 1988) (per curiam) (holding "VA hospital security guards are VA police officers" and thus fall within the scope of § 2680(h) ),
 
 with
 

 38 U.S.C. § 902
 
 (a) (designating VA police officers as employees);
 
 compare
 

 Caban
 
 ,
 
 671 F.2d at 1234
 
 ("By its terms, [ § 2680(h) ] waives the government's immunity to liability arising out of certain intentional torts committed by investigative and law enforcement officers such as the INS agents."),
 
 with
 

 8 U.S.C. § 1357
 
 (a) (stating agents may be "officer[s] or employee[s]"). This suggests that a federal agent's job responsibilities seem to be more outcome determinative than the agent's employment status. Indeed, if employment status were decisive in this context, Congress could easily insulate federal agents from intentional tort claims by designating them as employees, frustrating the reach of § 2680(h).
 
 See
 

 Whitman v. Am. Trucking Ass'ns
 
 ,
 
 531 U.S. 457
 
 , 468,
 
 121 S.Ct. 903
 
 ,
 
 149 L.Ed.2d 1
 
 (2001) ("Congress ... does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions....").
 

 My colleagues do not agree. They contend that interpreting the proviso to "cover[ ] only criminal law enforcement officers" maintains the distinction between "officers" and "employees" in other provisions of the Federal Tort Claims Act. Majority Op. at 217;
 
 see also
 

 id.
 

 at 217 n.11. But that approach "would render a significant part of [ § 2680(h) ] a nullity," as there would be no need to define the functions of an "investigative or law enforcement
 officer" if the provision only referred to "criminal law enforcement officers."
 
 Prot. & Advocacy for Persons with Disabilities v. Mental Health & Addiction Servs.
 
 ,
 
 448 F.3d 119
 
 , 125 (2d Cir. 2006) (Sotomayor, J.). It would also "violate[ ] the settled rule that a statute must ... be construed in such fashion that every word has some operative effect."
 
 United States v. Nordic Vill., Inc.
 
 ,
 
 503 U.S. 30
 
 , 36,
 
 112 S.Ct. 1011
 
 ,
 
 117 L.Ed.2d 181
 
 (1992) ;
 
 see also
 

 UnitedStates v. Palmeri
 
 ,
 
 630 F.2d 192
 
 , 199 (3d Cir. 1980) ("We should not construe a statute to make it redundant of itself...."). Thus the majority's reading does not "hew more closely" to Congress's definition of "investigative or law enforcement officer." Majority Op. at 226 n.26. Instead, it "transform[s] [it] into surplusage," reading it out of the proviso.
 
 United States v. Kouevi
 
 ,
 
 698 F.3d 126
 
 , 133 (3d Cir. 2012).
 

 We encounter the same problem if we read "investigative or law enforcement officer" as "a[ny] person who is designated an 'officer' and who performs traditional criminal law enforcement functions." Majority Op. at 217 n.11 (suggesting this interpretation in light of the anti-redundancy canon). This is because Congress listed "investigative or law enforcement officer" in the disjunctive, giving both terms "separate meanings."
 
 Reiter v. Sonotone Corp.
 
 ,
 
 442 U.S. 330
 
 , 339,
 
 99 S.Ct. 2326
 
 ,
 
 60 L.Ed.2d 931
 
 (1979) ("Canons of construction ordinarily suggest that terms connected by a disjunctive be given separate meanings, unless the context dictates otherwise...."). The majority's approach, however, blurs the distinction between each term, effectively deleting "investigative officer" from the proviso's text and "rob[bing]" it "of [any] independent and ordinary significance."
 
 [7]
 

 Id.
 

 at 338-39
 
 ,
 
 99 S.Ct. 2326
 
 .
 

 It is worth noting that the Seventh Circuit refused to adopt the same reading in a recent case.
 
 See
 

 Bunch
 
 ,
 
 880 F.3d at 943-45
 
 . Instead of limiting the proviso's reach to law enforcement officers,
 
 see
 
 Gov't Br. at 22,
 
 Bunch v. United States
 
 , No. 16-3775 (7th Cir. May 3, 2017) (advancing this argument), the Court noted § 2680(h) covers "both investigative
 
 and
 
 law[ ]enforcement officers,"
 
 Bunch
 
 ,
 
 880 F.3d at 944
 
 (emphasis in original). More importantly, it held a chemist in the Bureau of Alcohol, Tobacco, and Firearms ("ATF") could fall within the proviso's terms.
 
 See
 

 id.
 

 at 943
 
 ("The materials presented ... at the summary-judgment stage do not foreclose the possibility that the law empowered Kinard (and his fellow chemists) to execute searches or to seize evidence."). In reaching its holding, the Court assigned no significance to the types of inspections (
 
 i.e.
 
 , searches) the chemist could perform.
 
 See
 
 id.
 

 (stating
 
 27 C.F.R. § 55.31
 
 (1995) authorizes ATF officers to "inspect the site of any accident or fire" (internal quotation marks omitted)). Nor did it distinguish between officers and employees.
 
 See
 
 id.
 

 (acknowledging the regulations also defined an "ATF officer" as "
 
 [a]n officer or employee
 
 of the Bureau of Alcohol, Tobacco[,] and Firearms (ATF) authorized to perform any function related to ...
 
 administration
 
 or enforcement" (first alteration in original) (emphases added) (internal quotation marks omitted)). Rather, it looked to the chemist's job responsibilities, examining them vis-à-vis the proviso's language.
 
 See
 
 id.
 

 The majority,
 by contrast, limits the proviso's reach before undertaking this analysis. This is at odds with the Seventh Circuit's reasoning, and it leaves plaintiffs across the country without a consistent set of remedies.
 

 While the Supreme Court has not decided this issue, it has also been reluctant to constrict the proviso's scope.
 
 See
 

 Millbrook v. United States
 
 ,
 
 569 U.S. 50
 
 , 54, 57,
 
 133 S.Ct. 1441
 
 ,
 
 185 L.Ed.2d 531
 
 (2013) (declining to read additional language into § 2680(h) 's "unambiguous text" and overruling
 
 Pooler v. United States
 
 ,
 
 787 F.2d 868
 
 (3d Cir. 1986), and its progeny, including
 
 Matsko v. United States
 
 ,
 
 372 F.3d 556
 
 (3d Cir. 2004) ). Critically, it rejected an interpretation that would cabin the definition of "investigative or law enforcement officer."
 
 See
 

 id.
 
 at 56,
 
 133 S.Ct. 1441
 
 . In the Court's view, "[h]ad Congress intended to ... narrow the scope of the proviso," it would have included language to that effect.
 

 Id.
 

 at 57
 
 ,
 
 133 S.Ct. 1441
 
 ;
 
 see also
 

 Campos v. United States
 
 ,
 
 888 F.3d 724
 
 , 737 (5th Cir. 2018) (noting
 
 Millbrook
 
 "refus[es] to allow limitations to be placed on the ... proviso").
 

 The same principle is apt here: if Congress intended § 2680(h) to apply solely to criminal law enforcement officers, it would have "limited it to claims arising from 'acts or omissions of [criminal] law enforcement officers' " and would not have included any additional definitional language.
 
 Millbrook
 
 ,
 
 569 U.S. at 57
 
 ,
 
 133 S.Ct. 1441
 
 ;
 
 see also
 

 Burgess v. United States
 
 ,
 
 553 U.S. 124
 
 , 129,
 
 128 S.Ct. 1572
 
 ,
 
 170 L.Ed.2d 478
 
 (2008) ("Statutory definitions control the meaning of statutory words ... in the usual case." (alteration in original) (internal quotation marks omitted));
 
 Stenberg
 
 ,
 
 530 U.S. at 942
 
 ,
 
 120 S.Ct. 2597
 
 ("When a statute includes an explicit definition, we must follow that definition, even if it varies from that term's ordinary meaning."). Thus, in light of its statutory definition and Supreme Court precedent, § 2680(h) 's references to "investigative officers" and "any officer of the United States" cannot solely encompass criminal law enforcement officers.
 

 My colleagues do not discuss much of this case law. Instead, they rely on non-text authorities to advance their reading of "officer."
 
 See infra
 
 Part III.A-B (addressing the majority's arguments). I do not follow their approach because it is our job to construe Congress's language "in accordance with its ordinary meaning."
 
 United States v. Husmann
 
 ,
 
 765 F.3d 169
 
 , 173 (3d Cir. 2014) (internal quotation marks omitted) (quoting
 
 Octane Fitness, LLC v. ICON Health & Fitness, Inc.
 
 , --- U.S. ----,
 
 134 S.Ct. 1749
 
 , 1756,
 
 188 L.Ed.2d 816
 
 (2014) ). Here, if we look to dictionary definitions to determine Congress's intent, they do not contain any reference to law enforcement personnel.
 
 See Officer
 
 , Webster's Third New International Dictionary (1971) (stating an officer is "one charged with administering and maintaining the law (as a constable, bailiff, sheriff)" or "one who holds an office; one who is appointed or elected to serve in a position of trust, authority, or command esp[ecially] as specif[ically] provided for by law");
 
 Officer
 
 , Black's Law Dictionary (4th ed. rev. 1968) (noting an officer is "[o]ne who is charged by a superior power (and particularly by government) with the power and duty of exercising certain functions. One who is invested with some portion of the functions of the government to be exercised for the public benefit...."). This cuts against my colleagues' interpretation, as it tells us the proviso's reach is more expansive than their take.
 

 I am mindful that "a 'word must not be read in isolation but instead [is] defined by reference to its statutory context.' "
 
 Husmann
 
 ,
 
 765 F.3d at 173
 
 (quoting
 
 Ali v. Fed. Bureau of Prisons
 
 ,
 
 552 U.S. 214
 
 , 234,
 
 128 S.Ct. 831
 
 ,
 
 169 L.Ed.2d 680
 
 (2008) ). But this too does not favor a restrictive reading of the proviso. Instead, it marshals against the majority's approach, as the term "any officer of the United States" must be read to "ha[ve] a wide reach."
 
 Boyle v. United States
 
 ,
 
 556 U.S. 938
 
 , 944,
 
 129 S.Ct. 2237
 
 ,
 
 173 L.Ed.2d 1265
 
 (2009) ("The term 'any' ensures that the definition has a wide reach. ...");
 
 see also
 

 Ali
 
 ,
 
 552 U.S. at 220
 
 ,
 
 128 S.Ct. 831
 
 ("Congress'[s] use of 'any' to modify 'other law enforcement officer' [in § 2680(c) ] is most naturally read to mean law enforcement officers of whatever kind."). Thus "any officer of the United States" includes (1) those "charged with administering and maintaining the law" and (2) those "who [are] appointed or elected to serve in a position of trust, authority, or command."
 
 Officer
 
 , Webster's Third New International Dictionary (1971). These definitions are consistent with the statutory scheme and comport with my earlier observation that an "agent's job responsibilities seem to be ... outcome determinative" under § 2680(h). More importantly, they suggest that my colleagues' reading is not consistent with the proviso's plain meaning.
 
 [8]
 

 If we apply these definitions in this context, TSOs qualify as officers. They are charged with administering and maintaining the law, and their searches are directed to illegal and prohibited items on passenger aircraft.
 
 See
 

 49 U.S.C. § 46505
 
 (providing criminal penalties for carrying a weapon or explosive on aircraft);
 
 see also
 

 49 C.F.R. §§ 172.101
 
 , 175.10(a) (listing "hazardous materials" that are not permitted on flights). They also qualify as officers under the second definition because they are appointed by the Under Secretary of Transportation for Security,
 
 see
 

 49 U.S.C. § 44935
 
 note, and have the sole authority to conduct pre-boarding screenings for "flights ... originating in the United States,"
 

 id.
 

 § 44901(a).
 

 Accordingly, TSOs are unambiguously "officers of the United States" and thus fall within § 2680(h) 's proviso.
 

 D. Even were the text of the proviso ambiguous, we must resolve that ambiguity against the Government and in Pellegrino's favor.
 

 My colleagues assert that § 2680(h) is ambiguous.
 
 See, e.g.
 
 , Majority Op. at 218 n.12. They claim "an unclear definitional phrase"-here, "investigative or law enforcement officer"-"may take meaning from the term to be defined."
 

 Id.
 

 at 218
 
 (alteration omitted) (internal quotation marks omitted) (quoting
 
 United States v. Stevens
 
 ,
 
 559 U.S. 460
 
 , 474,
 
 130 S.Ct. 1577
 
 ,
 
 176 L.Ed.2d 435
 
 (2010) ).
 

 But the language of the proviso is neither ambiguous nor vague. Instead, it sets out two terms, "investigative or law enforcement officer," and gives them a precise definition. My colleagues do not point to a single word in the definition that is unclear. Rather, they seem troubled by the "unintended breadth" of the proviso and
 consider that perception a license to construe it narrowly.
 

 Id.
 

 at 218 n.12 (internal quotation marks omitted). This is not enough to establish ambiguity.
 

 However, even if we assume the text is ambiguous, it would not authorize us to construe the proviso narrowly in favor of sovereign immunity and against Pellegrino's claims. Instead, the Supreme Court has instructed us to construe the Federal Tort Claims Act broadly and has stated that it "does
 
 not
 
 implicate the general rule that 'a waiver of the Government's sovereign immunity will be strictly construed ... in favor of the sovereign.' "
 
 Dolan
 
 ,
 
 546 U.S. at 491
 
 ,
 
 126 S.Ct. 1252
 
 (emphasis added) (quoting
 
 Lane v. Peña
 
 ,
 
 518 U.S. 187
 
 , 192,
 
 116 S.Ct. 2092
 
 ,
 
 135 L.Ed.2d 486
 
 (1996) );
 
 see also
 

 Kosak v. United States
 
 ,
 
 465 U.S. 848
 
 , 853 n.9,
 
 104 S.Ct. 1519
 
 ,
 
 79 L.Ed.2d 860
 
 (1984) ("[U]nduly generous interpretations of the [Federal Tort Claims Act's] exceptions run the risk of defeating the central purpose of the statute.");
 
 United States v. Yellow Cab Co.
 
 ,
 
 340 U.S. 543
 
 , 554,
 
 71 S.Ct. 399
 
 ,
 
 95 L.Ed. 523
 
 (1951) (declining to construe the Federal Tort Claims Act in favor of sovereign immunity). As the proviso reasserts the Federal Tort Claims Act's waiver of sovereign immunity, we must resolve any ambiguity against the Government-that is, in favor of allowing Pellegrino's claims to proceed to trial.
 

 Nonetheless, my colleagues note that
 
 Dolan
 
 tells us to construe the proviso in favor of the Government.
 
 See
 
 Majority Op. at 230 n.31 ("To the extent
 
 Dolan
 
 does apply to an
 
 exception to an exception
 
 , it directs us 'to identify those circumstances which are within the words and reason of the
 
 exception
 
 -no less and no more.' " (emphases added) (internal quotation marks omitted) (quoting
 
 Dolan
 
 ,
 
 546 U.S. at 492
 
 ,
 
 126 S.Ct. 1252
 
 )). But that approach misconstrues
 
 Dolan
 
 , which discussed this rule in the context of § 2680 's subsections, almost all of which extend sovereign immunity.
 
 See
 

 546 U.S. at 492
 
 ,
 
 126 S.Ct. 1252
 
 ("Hence, the proper objective of a court attempting to construe one of the subsections of
 
 28 U.S.C. § 2680
 
 is to identify 'those circumstances which are within the words and reason of the
 
 exception
 
 [
 
 i.e.
 
 , the parts of § 2680 that are exceptions to the Federal Tort Claims Act's waiver of immunity]-no less and no more. Having made that inquiry here, we conclude [the Petitioner's] claims fall outside § 2680(b)." (emphasis added) (internal quotation marks omitted) (internal citation omitted)).
 
 [9]
 

 Moreover, we cannot apply
 
 Dolan
 
 's language here, as the Supreme Court in
 
 Millbrook
 
 took a markedly different approach in our context, casting the proviso in a broad light.
 
 See
 

 569 U.S. at 57
 
 ,
 
 133 S.Ct. 1441
 
 ("Had Congress intended to further narrow the scope of the proviso, Congress could have limited it....");
 
 see also
 

 Campos
 
 ,
 
 888 F.3d at 737
 
 (discussing "
 
 Millbrook
 
 's refusal to allow limitations to be placed on the ... proviso");
 
 Bunch
 
 ,
 
 880 F.3d at 945
 
 ("We are also influenced by the broad reading of the law[ ]enforcement proviso that the Court adopted in
 
 Millbrook
 
 .").
 

 My colleagues also claim our case is governed by
 
 Foster v. United States
 
 ,
 
 522 F.3d 1071
 
 (9th Cir. 2008). Though
 
 Foster
 
 discusses an exception to an exception (
 
 i.e.
 
 , those portions of § 2680 that reassert
 waiver), its analysis is circumscribed to § 2680(c)(1)-(4), a provision that has no bearing on Pellegrino's claims.
 
 See
 

 id.
 

 at 1079
 
 ("[T]he text of § 2680(c)(1)-(4), uncontradicted by its legislative history, provides some support for a narrow reading of the re-waiver [a waiver, followed by an exception to the waiver (thus no waiver), followed by an exception to the exception (hence back to a waiver) is called a re-waiver] of sovereign immunity in forfeiture actions...."). Its holding is similarly limited to § 2680(c)(1)-(4), and it provided no indication whether the Court would reach the same result in the context of § 2680(h).
 
 See
 
 id.
 

 ("Consequently, we hold that the re-waiver of sovereign immunity in
 
 28 U.S.C. § 2680
 
 (c)(1)-(4) applies only to property seized solely for the purpose of forfeiture, even if the government had in mind, and later pursued, judicial forfeiture of property seized initially for a legitimate criminal investigative purpose."). Thus
 
 Foster
 
 does not provide an adequate basis for narrowly reading § 2680(h) 's proviso.
 

 Accordingly, even if the text were ambiguous, we are bound to resolve that ambiguity against sovereign immunity.
 
 See
 

 Millbrook
 
 ,
 
 569 U.S. at 57
 
 ,
 
 133 S.Ct. 1441
 
 ;
 
 Campos
 
 ,
 
 888 F.3d at
 
 737 ;
 
 Bunch
 
 ,
 
 880 F.3d at 945
 
 . As such, § 2680(h) does not bar Pellegrino's false arrest, false imprisonment, and malicious prosecution claims.
 

 III. The majority's arguments do not counsel a different result.
 

 My colleagues arrive at a different outcome after consulting various canons of construction, similar statutes across the Code, and the text of the Transportation Security Act. They examine the legislative history surrounding § 2680(h) and our sister Circuits' case law for guidance. In view of these sources, they hold that § 2680(h) 's proviso extends only to criminal law enforcement officers and thus does not apply to TSOs.
 

 While some of their reasoning may be supportive in isolation, it cannot prevail over the clear text of § 2680(h). Nor can it overcome binding Supreme Court precedent that directs us how to apply the canons of construction and interpret statutory definitions. Consequently, I do not believe the proviso can be read to exclude TSOs from its reach.
 

 A. Per Supreme Court precedent, we cannot employ the canons of construction to constrict the proviso's clear and unambiguous text.
 

 To recap my colleagues' reasoning, they claim § 2680(h) 's proviso is directed to criminal law enforcement officers because each of its powers-" 'to execute searches, to seize evidence, or to make arrests for violations of Federal law'-has criminal law connotations." Majority Op. at 217 (quoting
 
 28 U.S.C. § 2680
 
 (h) ). They state that each of the powers "helps give meaning to the others, reinforcing that ... the term 'investigative or law enforcement officer' ... means those officers who perform criminal law enforcement functions."
 

 Id.
 

 at 218
 
 . In support of their position, they rely on the canon
 
 noscitur a sociis
 
 , which tells us that "a word is known by the company it keeps."
 
 Gustafson v. Alloyd Co.
 
 ,
 
 513 U.S. 561
 
 , 575,
 
 115 S.Ct. 1061
 
 ,
 
 131 L.Ed.2d 1
 
 (1995).
 

 Although this canon is a "useful rule of construction ... where words are of obscure or doubtful meaning,"
 
 Russell Motor Car Co. v. United States
 
 ,
 
 261 U.S. 514
 
 , 520,
 
 43 S.Ct. 428
 
 ,
 
 67 L.Ed. 778
 
 (1923), it is not used when the text is unambiguous,
 
 see
 

 Bilski v. Kappos
 
 ,
 
 561 U.S. 593
 
 , 604,
 
 130 S.Ct. 3218
 
 ,
 
 177 L.Ed.2d 792
 
 (2010) (noting the canon was inapplicable because the pertinent provision already contained a statutory definition);
 

 United States v. Stevens
 
 ,
 
 559 U.S. 460
 
 , 474,
 
 130 S.Ct. 1577
 
 ,
 
 176 L.Ed.2d 435
 
 (2010) (declining to apply
 
 noscitur a sociis
 
 when the text "contain[ed] little ambiguity"). "[W]hen words have a clear definition, and all other contextual clues support that meaning, the canons cannot properly defeat Congress's decision to draft broad legislation."
 
 Yates v. United States
 
 , --- U.S. ----,
 
 135 S.Ct. 1074
 
 , 1097,
 
 191 L.Ed.2d 64
 
 (2015) (plurality opinion) (Kagan, J., dissenting).
 

 Here, because § 2680(h) was enacted six years after the Supreme Court decided
 
 Terry v. Ohio
 
 , "execute searches" has a clear meaning that derives from the Court's definition of a search: "a careful exploration of the outer surfaces of a person's clothing all over his or her body in an attempt to find weapons...."
 
 392 U.S. at 16
 
 ,
 
 88 S.Ct. 1868
 
 ;
 
 see also
 

 Albernaz v. United States
 
 ,
 
 450 U.S. 333
 
 , 341-42,
 
 101 S.Ct. 1137
 
 ,
 
 67 L.Ed.2d 275
 
 (1981) ("[I]f anything is to be assumed from the congressional silence on this point, it is that Congress was aware of the [pertinent Supreme Court holding] and legislated with it in mind. It is not a function of this Court to presume that Congress was unaware of what it accomplished...." (third alteration in original) (internal quotation marks omitted)). There is no indication that Congress intended to depart from that meaning when it enacted § 2680(h). Nor is there any indication that the relevant portion of the proviso is ambiguous. In this context, the canons are not in play here. Moreover, "canons of construction are no more than rules of thumb that help courts determine the meaning of legislation, and in interpreting a statute a court should always turn first to one, cardinal canon before all others,"
 
 Conn. Nat'l Bank v. Germain
 
 ,
 
 503 U.S. 249
 
 , 253,
 
 112 S.Ct. 1146
 
 ,
 
 117 L.Ed.2d 391
 
 (1992), "that courts must presume that a legislature says in a statute what it means and means in a statute what it says there,"
 

 id.
 

 at 253-54
 
 ,
 
 112 S.Ct. 1146
 
 .
 

 In any event, we have observed that
 
 noscitur a sociis
 
 "is of little help where other evidence reveals that Congress intended to treat the disputed term differently from its neighbors."
 
 In re Cont'l Airlines, Inc.
 
 ,
 
 932 F.2d 282
 
 , 288 (3d Cir. 1991). "When Congress has separated terms with the conjunction 'or,' " we concluded "that [it] intended to give the terms 'their separate, normal meanings.' "
 

 Id.
 

 (quoting
 
 Garcia v. United States
 
 ,
 
 469 U.S. 70
 
 , 73,
 
 105 S.Ct. 479
 
 ,
 
 83 L.Ed.2d 472
 
 (1984) );
 
 see also
 

 In re Gi Nam
 
 ,
 
 273 F.3d 281
 
 , 288 (3d Cir. 2001) (stating
 
 noscitur a sociis
 
 has "no application" when Congress separates distinct terms with disjunctive phrasing). The Supreme Court has articulated the same view, declining to apply the canon to a list of three "disparate" items-"congressional, administrative, or [Government Accountability Office] sources"-because it would "rob" each term "of its independent and ordinary significance."
 
 [10]
 

 Graham Cty. Soil & Water Conservation Dist. v. United States ex rel. Wilson
 
 ,
 
 559 U.S. 280
 
 , 288-89,
 
 130 S.Ct. 1396
 
 ,
 
 176 L.Ed.2d 225
 
 (2010) (alteration omitted) (internal quotation marks omitted) (quoting
 
 Reiter
 
 ,
 
 442 U.S. at 338-39
 
 ,
 
 99 S.Ct. 2326
 
 ).
 
 [11]
 

 Although the Court acknowledged that the terms had a similar "connotation," that was not a critical factor in its analysis.
 

 Id.
 

 at 289 n.7,
 
 130 S.Ct. 1396
 
 (declining to apply the canon to the phrase "congressional, administrative, or GAO sources" even though each term had a "governmental connotation"). Instead, it emphasized each word's distinct meaning and declined to restrict that meaning by way of the canon.
 
 See
 

 id.
 

 at 288-89
 
 ,
 
 130 S.Ct. 1396
 
 .
 

 The Supreme Court's reasoning is apt here, as § 2680(h) 's proviso lists three separate phrases that describe different activities: "execute searches," "seize evidence," and "make arrests."
 
 28 U.S.C. § 2680
 
 (h). All three terms have a "character of [their] own" that cannot be "submerged" by their common connotation.
 
 Russell Motor Car
 
 ,
 
 261 U.S. at 519
 
 ,
 
 43 S.Ct. 428
 
 . Thus "execute searches" cannot be read in the same vein as "seize evidence" or "make arrests." Instead, it must be read consistently with its plain meaning, which is delinked as a disjunctive (that is, separate) concept.
 

 With this in mind, the majority suggests the meaning of "execute searches" still sounds in criminal law, as the phrase "execute a search" is typically used when a warrant is involved. The Seventh Circuit recently rejected a similar argument.
 
 See
 

 Bunch
 
 ,
 
 880 F.3d at 945
 
 ("[W]e note that [§] 2680(h) does not require [a federal agent] to have had authority to seek and execute search
 
 warrants
 
 ; it speaks only of executing searches, and many searches do not require warrants." (emphasis in original)). Congress also drafted § 2680(h) to provide a remedy against
 
 warrantless
 
 searches.
 
 See
 
 S. Rep. No. 93-588, at 2790 (1973) (stating § 2680(h) was enacted in the aftermath of raids in Collinsville, Illinois, where federal agents "entered ... two houses without warrants ..., kicked in the doors without warning, shout[ed] obscenities, and threaten[ed] the occupants with drawn weapons"). In line with these principles, plaintiffs have relied on § 2680(h) to recover for abuses related to warrantless searches and seizures.
 
 See, e.g.
 
 ,
 
 Bunch
 
 ,
 
 880 F.3d at 943-44
 
 (holding a forensic chemist's inspection could be a search under § 2680(h) ).
 

 My view is that, given the broad reach of the proviso, "execute searches" does not take its meaning from the term "execute a warrant," and its clear-cut meaning governs our analysis.
 
 See
 

 id.
 

 at 943, 945
 
 (suggesting "search" in § 2680(h) could refer to inspections performed by officers and
 employees, a search incident to arrest, searches under the automobile exception, searches performed with consent, and protective sweeps);
 
 Execute
 
 , Webster's Third New International Dictionary (1971) (providing several definitional options of "execute," none of which include a reference to "executing warrants").
 

 B. Other statutes are not effective guideposts for interpreting § 2680(h) 's language because none of them contain the same definition.
 

 My colleagues examine other provisions in the U.S. Code that use the term "investigative or law enforcement officer." They find that the term is used in only one other statute: Title III of the Omnibus Crime Control and Safe Streets Act of 1968,
 
 see
 

 18 U.S.C. §§ 2510
 
 - 2522, and the Electronic Communications Privacy Act of 1986, which amended Title III (for simplicity, I refer to both statutes as "Title III"),
 
 see
 

 id.
 

 §§ 3121-3127. In their view, Title III's context tells us that the term "investigative or law enforcement officer" covers only criminal law enforcement personnel. Thus they conclude § 2680(h) must also encompass only criminal law enforcement officers.
 

 Title III, however, is not helpful to our inquiry because it provides its own definition of "investigative or law enforcement officer." It considerably departs from that of § 2680(h), as it includes attorneys.
 
 See
 

 id.
 

 § 2510 (stating an investigative or law enforcement officer is "any officer ... who is empowered by law to
 
 conduct investigations
 
 of or to make arrests for offenses enumerated in this chapter, and
 
 any attorney
 
 authorized by law to prosecute or participate in the prosecution of such offenses" (emphases added)). It also includes the term "conduct investigations," while § 2680(h) includes the disjunctive phrases "to execute searches" and "to seize evidence."
 
 See
 
 id.
 

 With these obvious distinctions, I am doubtful that Title III and § 2680(h) should be read consistently or that the former constricts the latter.
 
 See
 

 Tooahnippah v. Hickel
 
 ,
 
 397 U.S. 598
 
 , 606,
 
 90 S.Ct. 1316
 
 ,
 
 25 L.Ed.2d 600
 
 (1970) (declining to construe two provisions similarly because "the coverage of these [two] sections is not identical");
 
 In re Fed.-Mogul Global Inc.
 
 ,
 
 684 F.3d 355
 
 , 372-73 (3d Cir. 2012) (noting two provisions of the Bankruptcy Code should not be read in the same way in view of their distinct language).
 

 In a similar vein, I am not persuaded that other statutory definitions of "law enforcement officer" limit § 2680(h) 's text.
 
 [12]
 

 See
 
 Majority Op. at 219 (listing definitions of "law enforcement officer" in Titles 12 and 18 of the U.S. Code). Congress gave us no sign that these definitions carry any weight in the context of our case. Indeed, it could have easily written § 2680(h) to incorporate any of them, but chose not to do so.
 
 See
 

 Millbrook
 
 ,
 
 569 U.S. at 56-57
 
 ,
 
 133 S.Ct. 1441
 
 (rejecting an argument that would narrow the definition of "investigative or law enforcement officer" and stating Congress could have restricted the scope of § 2680(h) 's proviso if it wished);
 
 see also
 

 Burgess
 
 ,
 
 553 U.S. at 130-31
 
 ,
 
 128 S.Ct. 1572
 
 (illustrating that Congress knows how to "incorporate the definition of a particular word into the definition of a compound expression"). Instead (and to repeat), it gave § 2680(h) its own definition of "investigative or law enforcement officer," which we must apply "even if it varies from that term's ordinary meaning."
 
 Stenberg
 
 ,
 
 530 U.S. at 942
 
 ,
 
 120 S.Ct. 2597
 
 . We may not resolve any " 'dissonance'
 

 between ordinary meaning and the unambiguous words of a definition ... in favor of [the term's] ordinary meaning. If that were the case, there would hardly be any use in providing a definition."
 
 Bond v. United States
 
 , --- U.S. ----,
 
 134 S.Ct. 2077
 
 , 2096,
 
 189 L.Ed.2d 1
 
 (2014) (Scalia, J., concurring in the judgment).
 

 Accordingly, other provisions and statutory definitions do not illuminate the meaning of § 2680(h) 's proviso and cannot be used to cabin its reach.
 

 C. The Transportation Security Act does not clarify whether the proviso extends to TSOs.
 

 The majority states § 2680(h) 's proviso does not include TSOs because the Transportation Security Act "distinguishes between 'employees' ... and 'law enforcement officers.' " Majority Op. at 226. They note it classifies screeners as employees, but at the same time allows the TSA's Under Secretary to "designate an employee ... to serve as a law enforcement officer."
 
 49 U.S.C. § 114
 
 (p)(1). The latter may "carry a firearm[,] make an arrest ... [,] and ... seek and execute warrants."
 

 Id.
 

 § 114(p)(2). Because the Act consistently differentiates between screeners and TSA law enforcement officers in this respect, the majority infers the former are not "investigative or law enforcement officers" under § 2680(h).
 

 The Transportation Security Act (like the other statutes discussed above) has its own definition of "law enforcement officer." In full it defines "law enforcement officer" as an "employee" who may ...
 

 (A) carry a firearm;
 

 (B) make an arrest without a warrant for any offense against the United States committed in the presence of the officer, or for any felony cognizable under the laws of the United States if the officer has probable cause to believe that the person to be arrested has committed or is committing the felony;
 
 and
 

 (C) seek and execute warrants for arrest or seizure of evidence issued under the authority of the United States upon probable cause that a violation has been committed.
 

 Id.
 

 § 114(p)(1)-(2) (emphasis added). This definition significantly varies from the expansive definition in § 2680(h), which uses disjunctive phrasing and includes "any officer of the United States who is empowered by law to execute searches, to seize evidence,
 
 or
 
 to make arrests for violations of Federal law."
 
 28 U.S.C. § 2680
 
 (h) (emphasis added). The term "law enforcement officer" in § 114(p) is also at odds with the broader term "investigative or law enforcement officer" in § 2680(h).
 
 See
 
 Corrected Tr. of Oral Arg. at 21:21-22:4 (noting this key distinction between § 114(p) and § 2680(h)). In view of these obvious differences, § 114(p) is neither instructive nor helpful in construing § 2680(h).
 

 There is also no indication that Congress drafted § 114(p) with § 2680(h) 's proviso in mind. If Congress intended to use the former to immunize TSOs from liability, it would have "provide[d] a relatively clear indication of its intent in the text of ... [either] provision."
 
 TC Heartland LLC v. Kraft Foods Grp. Brands LLC
 
 , --- U.S. ----,
 
 137 S.Ct. 1514
 
 , 1520,
 
 197 L.Ed.2d 816
 
 (2017). More importantly, had Congress wished to limit the proviso to criminal law enforcement officers, it would have specified as much in § 2680(h).
 
 See
 

 Whitman
 
 , 531 U.S. at 468,
 
 121 S.Ct. 903
 
 ("Congress ... does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions...."). It did not do so. My takeaway: there is no basis for importing § 114(p) into the Federal Tort Claims Act to bar Pellegrino's claim. Nor is there any reason to use this case to bar other
 plaintiffs' claims against agents who are not criminal law enforcement officers.
 

 My colleagues do not address these points. Instead, they maintain that " § 114(p) remains instructive" in this context "because it reflects Congress's own distinction between TSA screeners and 'law enforcement officers' in Title 49, which tracks [the] distinction between 'employees' and 'officers' in the [Federal Tort Claims Act]." Majority Op. at 226 n.27 (alteration omitted). They claim other statutes similarly distinguish between employees and law enforcement officers and suggest we should follow these distinctions for the purposes of § 2680(h).
 
 See
 

 id.
 

 I cannot join the majority in adopting this approach because it is an invitation to dilute § 2680(h) 's text. As noted, § 114(p) does not match the proviso's language and does not even define the same terms as the proviso.
 
 Compare
 

 49 U.S.C. § 114
 
 (p) (defining "law enforcement officer" using conjunctive language),
 
 with
 

 28 U.S.C. § 2680
 
 (h) (defining "investigative or law enforcement officer" using disjunctive language). As such, it is not an appropriate guidepost for determining whether TSOs fall within the proviso's reach.
 
 See
 

 Bunch
 
 ,
 
 880 F.3d at 944
 
 ("[ Section 2680(h) ] defines ['investigative or law enforcement officer'] as a person with legal authority to 'execute searches, to seize evidence,
 
 or
 
 to make arrests....' Any one of those three powers will do." (emphasis in original) (internal citation omitted) (quoting
 
 28 U.S.C. § 2680
 
 (h) )).
 

 Instead of narrowing § 2680(h) and importing § 114(p) into its framework, it is our job to enforce the proviso's explicit language. While TSOs do not fall within the terms of § 114(p), they are covered by § 2680(h). Neither § 114(p) nor other sections of the Transportation Security Act expressly preclude TSOs from the scope of the § 2680(h) proviso. Rather, they suggest the opposite: TSOs execute searches,
 
 see
 

 49 U.S.C. § 44901
 
 (a), and have the legal authority to do so,
 
 see
 
 id.
 

 [13]
 
 Thus, when the statutory scheme is considered as a whole, TSOs are investigative or law enforcement officers that are subject to the proviso.
 
 See
 

 Bunch
 
 ,
 
 880 F.3d at 943-45
 
 (engaging in the same analysis for a forensic chemist employed by the ATF);
 
 Sami v. United States
 
 ,
 
 617 F.2d 755
 
 , 764 (D.C. Cir. 1979) (concluding U.S. National Central Bureau officers were within § 2680(h), and thus unprotected by immunity, even though they "do not initiate or conduct investigations of their own but act primarily as conduits and screeners of information between foreign police departments and federal and state counterparts" (footnote omitted)),
 
 abrogated on other grounds by
 

 Sosa v. Alvarez-Machain
 
 ,
 
 542 U.S. 692
 
 ,
 
 124 S.Ct. 2739
 
 ,
 
 159 L.Ed.2d 718
 
 (2004).
 

 Lastly, I note the consequences of my colleagues' approach. No other Court of Appeals has gone as far as they do by categorically barring certain classes of individuals (
 
 i.e.
 
 , those who are not criminal law enforcement officers) from the reach of the proviso. Nor has any other Court of Appeals relied on another statute's and an agency's classifications to determine whether a federal agent is an "investigative or law enforcement officer" under § 2680(h).
 
 [14]
 
 The majority's reasoning
 would allow Congress-and perhaps even agencies-to exempt individuals from the proviso's reach simply by categorizing them as employees who lack criminal law enforcement powers.
 
 See
 
 Majority Op. at 227-28 (citing a TSA directive that discusses the distinctions between TSOs and law enforcement officers). It would also empower courts to disregard § 2680(h) 's statutory definition of "investigative or law enforcement officer" in favor of those terms' meanings as perceived by the particular judicial panel. Such a rule would allow courts to expand or contract statutory definitions as they see fit.
 
 See
 

 Bond
 
 , 134 S.Ct. at 2096 (Scalia, J., concurring in the judgment) (observing the "judge-empowering consequences" of an "interpretive rule" that would allow a term's ordinary meaning to prevail over its statutory definition). It would further allow Congress to depart from § 2680(h) 's literal text "in vague terms or ancillary provisions."
 
 Whitman
 
 , 531 U.S. at 468,
 
 121 S.Ct. 903
 
 . I do not believe that this is the correct interpretive method to apply here.
 
 See
 

 Sami
 
 ,
 
 617 F.2d at 765
 
 ("We are not inclined to read into [ § 2680(h) 's] language ... a narrower limitation on liability than that suggested by the plain meaning of the words."). Nor am I convinced this is what Congress intended when it enacted § 2680(h), § 114(p), or other provisions of the Transportation Security Act.
 

 The conclusion for me is simple. I am not inclined to read the proviso in § 2680(h) as narrowly as my colleagues, as I do not see the Transportation Security Act as limiting the scope set by the proviso's simple and direct words.
 

 D. Legislative history cannot overcome the clear text of § 2680(h) and does not preclude administrative searches from its purview.
 

 My colleagues next turn to the legislative history of § 2680(h) and refer to statements made by two members of Congress and comments made at a hearing by a Department of Justice official. They contend these snippets confirm that the proviso covers only criminal law enforcement officers. Ultimately, however, "it is the statute, and not [its legislative history], which is the authoritative expression of the law...."
 
 City of Chicago v. Envtl. Def. Fund
 
 ,
 
 511 U.S. 328
 
 , 337,
 
 114 S.Ct. 1588
 
 ,
 
 128 L.Ed.2d 302
 
 (1994). "[W]hen the statute's language is plain, the sole function of the courts-at least where the disposition required by the text is not absurd-is to enforce it according to its terms."
 
 Official Comm. of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp. v. Chinery
 
 ,
 
 330 F.3d 548
 
 , 556 (3d Cir. 2003) (en banc) (internal quotation marks omitted) (quoting
 
 Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.
 
 ,
 
 530 U.S. 1
 
 , 6,
 
 120 S.Ct. 1942
 
 ,
 
 147 L.Ed.2d 1
 
 (2000) ). "[W]e may only look to legislative history if [the] plain meaning produces a result that is not just unwise but is clearly absurd."
 
 United States v. Terlingo
 
 ,
 
 327 F.3d 216
 
 , 221 n.1 (3d Cir. 2003) (Becker, C.J.) (second alteration in original) (internal quotation marks omitted).
 

 When we look to § 2680(h) 's text, it nowhere makes any limiting reference to criminal law enforcement officers. While the legislative history contains several references to "law enforcement officers," it is worth noting that "statutory prohibitions often go beyond the principal evil to cover reasonably comparable evils, and it is ultimately the provisions of our laws rather than the principal concerns of our legislators by which we are governed."
 
 Oncale v. Sundowner Offshore Servs., Inc.
 
 ,
 
 523 U.S. 75
 
 , 79,
 
 118 S.Ct. 998
 
 ,
 
 140 L.Ed.2d 201
 
 (1998). It follows that § 2680(h) 's legislative history does not give us an adequate basis to circumscribe its plain text.
 

 My colleagues also discuss the legislative history of a related provision,
 
 31 U.S.C. § 3724
 
 , which authorizes the Attorney General to settle certain claims brought against "an investigative or law enforcement officer as defined in section 2680(h) of [T]itle 28 who is employed by the Department of Justice...." In their view, that provision's history before Congress suggests by analogy § 2680(h) applies only to criminal law enforcement officers, as it specifically excludes from its reach "the litigating arms of the Antitrust Division or ... the Civil Rights Division." H.R. Rep. No. 101-46, at 8 (1989).
 

 But these references cannot limit the proviso to criminal law enforcement personnel because both the Antitrust Division and Civil Rights Division perform criminal law enforcement functions.
 
 See Sections and Offices
 
 , U.S. Dep't of Justice, https://www.justice.gov/atr/sections-and-offices (last visited July 9, 2018) (indicating the Division has five "[c]riminal [s]ections and [o]ffices");
 
 About the Division
 
 , U.S. Dep't of Justice, https://www.justice.gov/crt/about-division (last visited July 9, 2018) (stating the Division has a criminal section). Nor does the legislative history differentiate between administrative searches and criminal law enforcement functions, as it indicates § 3724 applies to agents who conduct both.
 
 [15]
 

 See
 
 H.R. Rep. No. 101-46, at 7 (1989) (noting § 3724 applies to "a DEA Agent, ... a Border Patrolman, or a Deputy Marshal");
 
 see also
 

 28 U.S.C. § 566
 
 (e)(C) (noting the U.S. Marshals Service is authorized to issue certain types of administrative subpoenas);
 
 United States v. Bulacan
 
 ,
 
 156 F.3d 963
 
 , 967 (9th Cir. 1998) ("Limited administrative searches may be conducted at the border...."). Section 3724 thus gives us no reason to exclude administrative searches from the purview of § 2680(h) 's proviso. At best, it tells us that administrative searches may fall within the latter's terms.
 

 However, even if § 3724 lacked these references, we should be mindful that "Congress ... does not ... hide elephants in mouseholes."
 
 Whitman
 
 , 531 U.S. at 468,
 
 121 S.Ct. 903
 
 . Had it intended the proviso to cover only criminal searches and criminal law
 enforcement activities, "we would expect the text of ... [ § 2680(h) ] to say so."
 
 Puerto Rico v. Franklin Cal. Tax-Free Tr.
 
 , --- U.S. ----,
 
 136 S.Ct. 1938
 
 , 1947,
 
 195 L.Ed.2d 298
 
 (2016). Here, no part of § 2680(h) includes the words "criminal," "criminal searches," or "criminal law enforcement personnel." In the absence of those or similar terms, I cannot join my colleagues in limiting its scope.
 
 [16]
 

 E. Our sister Circuits' case law does not restrict § 2680(h) 's reach.
 

 The majority also examines other Circuits' case law, stating "other Courts of Appeals ... have treated only those performing criminal law enforcement duties as 'investigative or law enforcement officers' under the proviso." Majority Op. at 223-24. In my colleagues' view, their holding aligns with those Circuits.
 

 I disagree. None of our sister Circuits have stated that criminal law enforcement duties are a prerequisite in the context before us.
 
 Cf.
 

 Bunch
 
 ,
 
 880 F.3d at 943-45
 
 (rejecting the Government's argument that only law enforcement officers are covered by the § 2680(h) proviso and concluding a chemist who analyzed samples in a laboratory could "execute searches" or "seize evidence" under it). Moreover, "federal courts do not sit as councils of revision, empowered to rewrite legislation. ..."
 
 United States v. Rutherford
 
 ,
 
 442 U.S. 544
 
 , 555,
 
 99 S.Ct. 2470
 
 ,
 
 61 L.Ed.2d 68
 
 (1979). "We are not at liberty to rewrite the statute to reflect a meaning we deem more desirable" or to import a meaning derived from selected case law.
 
 Ali
 
 ,
 
 552 U.S. at 228
 
 ,
 
 128 S.Ct. 831
 
 (footnote omitted). "Instead, we must give effect to the text Congress enacted:" § 2680(h) 's proviso applies to TSOs because it encompasses any officer who is empowered by law to execute searches for violations of federal law.
 

 Id.
 

 In addition to the Seventh Circuit,
 
 see
 

 Bunch
 
 ,
 
 880 F.3d at 943-45
 
 , other Circuits also have construed § 2680(h) differently from the majority,
 
 see
 

 Celestine
 
 ,
 
 841 F.2d at 852-53
 
 (omitting the terms "criminal" or "criminal law enforcement officer" in its discussion of § 2680(h) );
 
 Hoston v. Silbert
 
 ,
 
 681 F.2d 876
 
 , 878-79 (D.C. Cir. 1982) (per curiam) (same);
 
 Caban
 
 ,
 
 671 F.2d at 1234-35
 
 (same);
 
 EEOC v. First Nat'l Bank of Jackson
 
 ,
 
 614 F.2d 1004
 
 , 1007-08 (5th Cir. 1980) (same);
 
 Hernandez v. Lattimore
 
 ,
 
 612 F.2d 61
 
 , 64 n.7 (2d Cir. 1979) (same);
 
 Solomon v. United States
 
 ,
 
 559 F.2d 309
 
 , 310 (5th Cir. 1977) (per curiam) (same);
 
 Johnson v. United States
 
 ,
 
 547 F.2d 688
 
 , 691 (D.C. Cir. 1976) (per curiam) (same). Instead of distinguishing between criminal law enforcement officers and administrative personnel,
 
 see
 
 Majority Op. at 223-25, these Courts have carefully examined whether a defendant's job duties fit the proviso on a case-by-case basis,
 
 see, e.g.
 
 ,
 
 Celestine
 
 ,
 
 841 F.2d at 852-53
 
 (undertaking this analysis for Veterans Administration hospital security guards);
 
 First Nat'l Bank of Jackson
 
 ,
 
 614 F.2d at 1007-08
 
 (same for Equal Employment Opportunity Commission agents);
 
 Johnson
 
 ,
 
 547 F.2d at 691
 
 (same for doctors at a Veterans Administration hospital). This indicates the inquiry
 under § 2680(h) is more contextual than the majority's approach, taking into account an agent's specific powers rather than her status as a criminal law enforcement officer.
 

 Critically, at least two Circuits have not adopted the majority's specific framework. In
 
 Sami v. United States
 
 , the D.C. Circuit held that a defendant was an "investigative or law enforcement officer" even though he lacked several attributes my colleagues deem conclusive in their analysis.
 
 617 F.2d at 765
 
 . The Court noted that the defendant's status or training as a law enforcement officer did not control its inquiry.
 
 See
 

 id.
 

 at 764
 
 . It also assigned no importance to the fact that the defendant did not "initiate or conduct investigations of [his] own but act[ed] primarily as [a] conduit[ ] and screener[ ] of information between foreign police departments and federal and state counterparts."
 

 Id.
 

 Rather, it cast § 2680(h) 's legislative history in an expansive light and viewed its text as "set[ting] finite boundaries around the kind of law enforcement abuses for which [Congress] wished to make the [G]overnment liable."
 

 Id.
 

 at 764-65
 
 . In doing so, the Court declined to "read ... a narrower limitation on liability than that suggested by the plain meaning of the words."
 

 Id.
 

 at 765
 
 .
 

 As noted,
 
 Bunch
 
 also declined to limit the proviso to law enforcement officers,
 
 880 F.3d at 944-45
 
 , and did not limit the term "execute searches" to the criminal context,
 

 id.
 

 at 945
 
 .
 
 [17]
 
 It did not draw any significance from the types of investigations the chemist-defendant performed.
 
 [18]
 

 ibr.US_Case_Law.Schema.Case_Body:v1">See
 

 id.
 

 at 943
 
 . Nor did it give conclusive weight to the chemist's employment status.
 
 See
 
 id.
 

 Although he was an "ATF officer," the Court noted that term referred to both "[ATF] officer[s] or employee[s]."
 

 Id.
 

 (internal quotation marks omitted) (quoting
 
 27 C.F.R. § 55.11
 
 (1995)).
 

 The approach of my colleagues sharply differs from our sister Circuits' reasoning in three main ways. First, they give determinative weight to an agent's status as a law enforcement officer even though the other Circuits did not do so.
 
 See
 

 id.
 

 at 944-45 ;
 
 Sami
 
 ,
 
 617 F.2d at 764
 
 . Second, they highlight TSOs' limited roles and their dependence on law enforcement officers, and yet this feature had no effect on the Seventh or D.C. Circuit's analysis.
 
 See
 

 Bunch
 
 ,
 
 880 F.3d at
 
 944-45 ;
 
 Sami
 
 ,
 
 617 F.2d at 764
 
 . Lastly, they read additional language into the proviso to restrain its reach while
 
 Sami
 
 and
 
 Bunch
 
 expressly refused to do the same.
 
 See
 

 Bunch
 
 ,
 
 880 F.3d at
 
 944-45 ;
 
 Sami
 
 ,
 
 617 F.2d at 765
 
 .
 

 In conclusion, my colleagues' interpretive framework finds little support in analogous decisions from our sister Circuits, and at least two Circuits have disregarded the key factors they consider decisive in their analysis.
 

 F. Our case law cannot be read as limiting § 2680(h) 's scope.
 

 My colleagues claim their holding is consistent with
 
 Matsko v. United States
 
 ,
 
 372 F.3d 556
 
 (3d Cir. 2004). In their view,
 
 Matsko
 
 effectively narrowed § 2680(h) to criminal law enforcement personnel because it stated that "employees of administrative agencies, no matter what investigative conduct they are involved in, do not come within the ... [proviso]."
 

 Id.
 

 at 560
 
 .
 

 Before discussing
 
 Matsko
 
 , it is important to note that the Supreme Court rejected most of its reasoning in a recent case.
 
 See
 

 Millbrook
 
 ,
 
 569 U.S. at 54-56
 
 ,
 
 133 S.Ct. 1441
 
 (overruling
 
 Pooler v. United States
 
 ,
 
 787 F.2d 868
 
 (3d Cir. 1986), and its progeny, including
 
 Matsko
 
 ). As such, it is questionable the effect
 
 Matsko
 
 has in our case. Even if we assume its influence is significant, we cannot read it as categorically excluding all employees from the proviso's reach. As noted already, VA police officers and INS agents would not qualify as "investigative or law enforcement officers" even though we know they are.
 

 The majority acknowledges this, but asserts
 
 Matsko
 
 draws a line "between administrative personnel performing solely administrative functions and those ... expressly designated law enforcement officers or assigned law enforcement duties." Majority Op. at 223. But the problem with this argument is that
 
 Matsko
 
 made no such distinction. It never mentioned the term "criminal law enforcement officer," nor did it refer to "criminal law enforcement duties." While it explained what types of agents are purportedly outside the realm of the proviso,
 
 Matsko
 
 never told us who would fit within it. Hence it does not stand for the broad holding the majority now attributes to it.
 

 More tellingly,
 
 Matsko
 
 's principle does not receive universal support from our sister Circuits.
 
 Bunch
 
 , for example, held a
 
 chemist
 
 who was primarily responsible for "investigative conduct"-"inspect[ing] the site of any accident or fire in which there is reason to believe that explosive materials were involved"-could be an investigative or law enforcement officer under § 2680(h).
 
 880 F.3d at 943
 
 (internal quotation marks omitted) (quoting
 
 27 C.F.R. § 55.31
 
 (1995)). It reached this conclusion even though the chemist was "[a]n officer
 
 or
 
 employee of [ATF] ... authorized to perform any function related to ...
 
 administration
 
 or enforcement."
 

 Id.
 

 (emphases added) (internal quotation marks omitted) (quoting
 
 27 C.F.R. § 55.11
 
 (1995)).
 

 Bunch
 
 's reasoning necessarily conflicts with
 
 Matsko
 
 because it did not give controlling weight to an agent's employment status,
 
 see
 

 id.
 

 , and emphasized the same investigatory powers that
 
 Matsko
 
 downplayed,
 
 compare
 
 id.
 

 (discussing the chemist's authority to inspect sites of certain accidents or fires),
 
 with
 

 Matsko
 
 ,
 
 372 F.3d at 560
 
 (noting the defendant had the "authority to inspect mines and investigate possible violations"). This suggests we cannot understand
 
 Matsko
 
 as limiting the types of personnel or activities that fall within § 2680(h) 's terms. If we do, we run the risk of advancing an inconsistent (and unduly narrow) reading of the provision.
 

 We encounter a similar problem if we look to
 
 Vanderklok v. United States
 
 ,
 
 868 F.3d 189
 
 (3d Cir. 2017), for guidance. As my colleagues correctly observe, it did not address whether TSOs fall within § 2680(h) 's proviso. Yet they rely on its language to exclude TSOs from its reach.
 

 See
 
 Majority Op. at 225 ("As we explained [in
 
 Vanderklok
 
 ,] 'TSA employees typically are not law enforcement officers and do not act as such.' " (quoting
 
 Vanderklok
 
 ,
 
 868 F.3d at
 
 208 ));
 
 see also
 

 id.
 

 at 227-28
 
 ("As we explained in
 
 Vanderklok
 
 , unlike criminal law enforcement officers, 'line TSA employees are not trained on issues of probable cause, reasonable suspicion, and other constitutional doctrines that govern law enforcement officers.' " (quoting
 
 Vanderklok
 
 ,
 
 868 F.3d at
 
 208 )). In their view,
 
 Vanderklok
 
 indicates "TSA screeners conduct only administrative searches, are not criminal law enforcement officers, and thus do not qualify as 'investigative or law enforcement officers' under [ § 2680(h) ]."
 

 Id.
 

 at 225
 
 .
 

 This approach misconstrues
 
 Vanderklok
 
 , which discussed TSOs' law enforcement powers in the context of a
 
 Bivens
 
 claim for retaliatory prosecution under the First Amendment (a
 
 Bivens
 
 action refers to "a private right of action for damages ... brought directly under the Constitution against federal officials,"
 
 Vanderklok
 
 ,
 
 868 F.3d at
 
 198 ).
 
 See
 

 id.
 

 at 208-09
 
 (explaining "there is a practical concern with establishing a court-crafted remedy in the [airport screening context]" because "a First Amendment retaliatory prosecution claim hinges, in part, on whether the allegedly offending government employee had probable cause to take some enforcement action"). It is also inconsistent with the proviso's text, which includes investigative and law enforcement officers separately. In light of
 
 Vanderklok
 
 's limited scope and § 2680(h) 's expansive language, we cannot presume the two are linked. Nor should we import the case's
 
 dicta
 
 on probable cause and other law enforcement powers to our case,
 
 see
 

 id.
 

 , as at least one other Circuit has declined to do the same,
 
 see, e.g.
 
 ,
 
 Bunch
 
 ,
 
 880 F.3d at 943-44
 
 .
 
 [19]
 

 IV. By analogizing TSA searches to routine administrative inspections, my colleagues preclude victims of TSA abuses from obtaining any meaningful remedy for a variety of intentional tort claims.
 

 Finally, my colleagues state that Pellegrino asks for a wholesale expansion of the Government's tort liability for administrative searches. They analogize TSA searches to routine administrative inspections and claim that a ruling in her favor would lead to a "significant ... waiver of sovereign immunity" for all administrative screenings. Majority Op. at 220.
 

 As a preliminary matter, we need not worry that Pellegrino's position would imperil the public fisc because
 
 amicus
 
 counsel allayed our concerns at oral argument: Individuals must file administrative complaints with the TSA before bringing any intentional-tort claims in federal court. In 2015, fewer than 200 individuals (out of 700 million individuals screened) filed complaints alleging the types of harms that fall within § 2680(h) 's terms. If 2015's statistics are representative, there will be no "flood of litigation" against the Government for alleged TSO abuses. Corrected Tr. of Oral Arg. at 26:20-21.
 

 Similarly, and to repeat for context, Pellegrino's position is not as expansive as the
 majority portrays it. Instead of asking us to waive immunity in all contexts, she requests that we determine whether TSOs are investigative or law enforcement officers under § 2680(h) and whether TSA screenings fall within its reach.
 
 Amicus
 
 counsel made this point at oral argument, noting the broad question of regulatory searches is not before us at this time.
 
 See id
 
 . at 9:1-2, 10:13-14. Consequently, we should not extrapolate Pellegrino's claims to include all possible administrative searches.
 
 See
 

 PDK Labs. Inc. v. DEA
 
 ,
 
 362 F.3d 786
 
 , 799 (D.C. Cir. 2004) (Roberts, J., concurring in part and concurring in the judgment) ("[T]he cardinal principle of judicial restraint-if it is not necessary to decide more, it is necessary not to decide more-counsels us to go no further.").
 

 Moreover, TSA searches are markedly different from routine administrative inspections. Unlike the screenings the majority cites (
 
 e.g.
 
 , inspections of books, records, food products, establishments, warehouses, factories, and emission sources),
 
 see
 
 Majority Op. at 220 & n.16, TSA searches extend to an individual's physical person and are directed to the general public. TSOs have the authority to conduct "pat-down searches," which include "inspection[s] of the head, neck, arms, torso, legs, and feet ... [,] includ[ing] head coverings and sensitive areas such as breasts, groin, and the buttocks."
 
 Security Screening
 
 , Transp. Sec. Admin., https://www.tsa.gov/travel/security-screening (last visited July 9, 2018). Given the wide scope of such screenings, they are not comparable to inspections of highly regulated items or facilities. Indeed, the potential for abuse and widespread harm may be greater with TSA searches than with almost any other type of administrative search.
 

 Amicus
 
 counsel acknowledges this point, highlighting several examples where TSOs abused their powers, injuring passengers.
 
 See
 
 Suppl. Reply Br. at 13-14. For example, TSOs at Denver International Airport "manipulated the security system ... so that one of them, a man, could grope 'attractive' male passengers coming through the checkpoint...." Lindsey Bever,
 
 TSA Employees Accused in Scanner Scam to 'Grope' Male Passengers
 
 , Wash. Post (Apr. 15, 2015), https://www.washingtonpost.com/news/morningmix/wp/2015/04/15/tsa-employees-accused-in-scanner-scam-to-grope-male-passengers. Although the TSA retained video footage, it could not identify any victims, which influenced the prosecutors' initial decision not to file charges.
 
 See
 
 id.
 

 Similarly, a male TSO at New York's LaGuardia Airport told a 21-year-old woman he needed to screen "[her] body and [her] luggage," led her into a bathroom, and sexually assaulted her. Ray Sanchez,
 
 New York TSA Worker Accused of Sexually Abusing Passenger
 
 , CNN (Aug. 29, 2015, 7:29 AM), https://www.cnn.com/2015/08/28/us/new-york-tsascreener-charged/index.html (internal quotation marks omitted). These types of abuses are more likely to occur in the context of TSA screenings, making them vastly dissimilar to regulatory searches confined to discrete items or facilities.
 

 While Pellegrino did not bring any assault or battery claims, the majority's holding would bar other plaintiffs from bringing those claims, leaving them without a remedy.
 
 [20]
 
 Their holding would also
 immunize TSOs that retaliate against passengers who demand better screening conditions or voice concerns over screening procedures. This cannot be what Congress intended in passing § 2680(h), which it characterized as "a minimal first step in providing a remedy against the Federal Government" for certain abuses. S. Rep. No. 93-588, at 2792 (1973). Nor is it faithful to statutory text that spells out a specific definition of "investigative or law enforcement officer" and nowhere limits itself to criminal law enforcement personnel.
 

 Accordingly, TSA searches are not the same as administrative inspections, and, by equating these concepts, today's holding denies recourse to those who are harmed by TSO abuses.
 

 V. Conclusion
 

 Pellegrino brings us an issue of first impression. She asks if she can recover against the TSOs who detained her and ordered her arrest at Philadelphia International Airport. Her specific claims-false arrest, false imprisonment, and malicious prosecution-fall within the Federal Tort Claims Act. While it ordinarily bars intentional tort claims against Government officials, it contains a proviso that would allow her claims to go forward if TSOs are "investigative or law enforcement officers." They are so if they are "officer[s] of the United States ... empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law."
 
 28 U.S.C. § 2680
 
 (h). TSOs fit this definition because they conduct searches,
 
 see
 

 49 C.F.R. § 1546.207
 
 (a), and have the legal authority to do so,
 
 see
 

 49 U.S.C. § 44901
 
 (a). They are also "officers of the United States," as they are tasked with administering and maintaining the law,
 
 see
 

 49 C.F.R. §§ 172.101
 
 , 175.10(a), and are given the exclusive authority to conduct pre-boarding screenings for "flights ... originating in the United States,"
 
 49 U.S.C. § 44901
 
 (a). Thus they fall within the ambit of the proviso, and Pellegrino's claims should proceed to trial.
 

 Yet my colleagues hold that they are not covered. They look to other statutes for clarification, consult various canons of construction, and also examine legislative history. Ultimately they conclude § 2680(h) covers only criminal law enforcement officers. In doing so, they depart from other Circuits' interpretation of the proviso.
 
 See
 

 Bunch
 
 ,
 
 880 F.3d at
 
 943-45 ;
 
 Sami
 
 ,
 
 617 F.2d at 764-65
 
 . They also disregard Supreme Court precedent that tells us how to interpret § 2680(h) 's language.
 
 See
 

 Millbrook
 
 ,
 
 569 U.S. at 56-57
 
 ,
 
 133 S.Ct. 1441
 
 . Their decision insulates TSOs from all intentional tort claims, leaving plaintiffs without a civil remedy. Absent congressional action, they cannot recover if a TSO assaults them, unlawfully detains them, or unlawfully lodges a criminal complaint against them. All of this is because my colleagues look through a lens that legislates "criminal" into a provision it nowhere appears.
 

 This is not what Congress intended, as it enacted § 2680(h) to serve as a broad remedy against tortious conduct.
 
 See
 
 S. Rep. No. 93-588, at 2791 (1973) (noting the provision "would submit the Government to liability whenever its agents act under color of law so as to injure the public through search and seizures that are conducted without warrants"). It also ignores Congress's definition of "investigative or law enforcement officer," which we must apply "even if it varies from that term's ordinary
 meaning."
 
 Stenberg
 
 , 530 U.S. at 942,
 
 120 S.Ct. 2597
 
 .
 

 In view of these principles, I disagree with my colleagues' reasoning. Instead of relying on non-textual sources, we must apply § 2680(h) 's plain language; other statutes, the canons, and legislative history (
 
 i.e.
 
 , authorities outside of the proviso) cannot defeat its words. Because the text tells the tale, I part with today's holding. I conclude that TSOs are investigative or law enforcement officers under § 2680(h) and that TSA searches do not evade its reach. In line with my conclusion, Pellegrino (and similarly situated plaintiffs) are entitled to their day in court. I respectfully dissent.
 

 While the relevant TSA official was notified that Pellegrino wished to speak with him, neither he nor his representative arrived at the checkpoint to speak with Pellegrino or her husband.
 

 On August 14, 2006, Pellegrino received a letter from the TSA indicating it was considering imposing a civil penalty for her actions during the July 29th incident at the airport. The TSA's letter also stated it had begun a Civil Action Enforcement investigation of the incident. Pellegrino's attorney wrote to and spoke with the TSA to defer the investigation and to preserve any relevant surveillance footage. It, however, maintained that no video cameras had captured the incident and thus no recordings existed for evidentiary purposes.
 

 My colleagues claim that "most of the prohibited items for which TSOs search are perfectly legal to possess in other contexts" and assert that TSOs may only assess civil penalties for screening violations. Majority Op. at 228 & n.29. In my view, these distinctions are not enough to exclude TSOs from the proviso's reach, as many other law enforcement officers search for items that are "perfectly legal to possess in other contexts" and also impose civil penalties for screening violations.
 
 See, e.g.
 
 ,
 
 Bringing Agricultural Products into the United States
 
 , U.S. Customs & Border Prot., https://www.cbp.gov/travel/clearing-cbp/bringing-agricultural-products-united-states (last visited July 9, 2018) (stating Customs and Border Protection agricultural specialists may assess civil penalties if a traveler brings certain agricultural products without appropriate "permits");
 
 see also CBP Careers in Focus: Agricultural Specialists-Protecting American Agriculture
 
 , U.S. Customs & Border Prot., https://www.cbp.gov/careers/join-cbp/which-cbp-career/agriculture-specialist-focus (last visited July 9, 2018) (noting agricultural specialists "work[ ] in a ... law[-]enforcement environment").
 

 The Supreme Court decided
 
 Terry
 
 six years before Congress enacted § 2680(h).
 
 Compare
 

 Terry v. Ohio
 
 ,
 
 392 U.S. 1
 
 ,
 
 88 S.Ct. 1868
 
 ,
 
 20 L.Ed.2d 889
 
 (1968),
 
 with
 
 Act of March 16, 1974, Pub. L. No. 93-253,
 
 88 Stat. 50
 
 .
 

 Even though pat-down searches are conducted analogously to
 
 Terry
 
 stops, the majority states they are not comparable because the latter "require reasonable, articulable suspicion." Majority Op. at 229. This misapprehends the TSA's screening procedures, which (in some instances) allow for pat-down searches if "a lower level of screening disclose[s] a reason to conduct a more probing search."
 
 Hartwell
 
 ,
 
 436 F.3d at
 
 180 ;
 
 see also
 
 Bob Burns,
 
 TSA Mythbuster: The Rest of the DFW Pat-Down Story
 
 , Transp. Sec. Admin. (Mar. 28, 2017), https://www.tsa.gov/blog/2017/03/28/tsa-mythbuster-rest-dfw-pat-down-story (noting pat-down searches may be conducted "if the screening technology alarms").
 

 The majority also claims we previously concluded that "screenings that escalate to a pat-down may be properly categorized ... as a 'single search under the administrative search doctrine.' " Majority Op. at 229 (quoting
 
 Hartwell
 
 ,
 
 436 F.3d at
 
 178 ). Our precedent, however, did not reach that holding.
 
 See
 

 Hartwell
 
 ,
 
 436 F.3d at 178
 
 ("We will employ [the Fifth Circuit's] method of analyzing Hartwell's entire experience as a single search under the administrative search doctrine, and-finding this approach sufficient to resolve the case-do not pass judgment on the [Second Circuit's] approach.").
 

 TSOs are not officers under
 
 5 U.S.C. § 2104
 
 's conjunctive test because they are not appointed by the head of an Executive agency.
 
 See
 

 5 U.S.C. § 105
 
 (noting an "Executive agency" includes "an Executive department, a Government corporation, and an independent establishment");
 
 49 U.S.C. § 44935
 
 note (stating TSOs are appointed by the Under Secretary of Transportation for Security). More importantly, Title 5 is not an appropriate guide in this context, as it excludes several federal agents who are unquestionably "investigative or law enforcement officers" under § 2680(h).
 
 See
 

 infra
 
 pp. 241.
 

 My colleagues state "it is not unusual for Congress to define 'law enforcement officer' by reference to the officer's duties, even if those duties all sound in criminal law." Majority Op. at 217 n.11. But Congress did not solely define "law enforcement officer" in § 2680(h). It also included the term "investigative officer." We fail to give that term any distinct meaning if we adopt the reading my colleagues advance, as it would excise "investigative officer" entirely from the proviso's text.
 

 The majority criticizes my use of "general dictionary definitions" and claims they unnecessarily expand the proviso's scope. Majority Op. at 229 n.30. Those definitions, however, are consistent across multiple dictionaries and fit the broader context of § 2680(h). The majority, by contrast, offers no definition of its own and instead relies on non-textual sources to dilute its plain meaning.
 

 Moreover, my reading of the provision would not expand its reach. I do not add extra text to it or assert that it should apply to officers who have no power to search, seize evidence, or make arrests. Rather, I give effect to Congress's language in its entirety without adding, as my colleagues do, limitations from outside sources.
 
 See
 

 id.
 

 at 217-20
 
 (relying on other statutes and inapplicable canons of construction to construe the proviso).
 

 28 U.S.C. § 2680
 
 (b) contains only an exception to the Federal Tort Claims Act, as it states, "The provisions of ... [§] 1346(b) of this title shall not apply to- ... (b) [a]ny claim arising out of the loss, miscarriage, or negligent transmission of letters or postal matter." It does not contain an exception to the exception (
 
 i.e.
 
 , a proviso) that reasserts the waiver.
 

 Contrary to the majority's assertions, the touchstone of my inquiry is not whether "the statute is phrased in the disjunctive." Majority Op. at 218 n.12. Instead, I examine whether a statutory list contains a set of terms that have "a[ ] comparable ... meaning."
 
 Graham Cty. Soil & Water Conservation Dist. v. United States ex rel. Wilson
 
 ,
 
 559 U.S. 280
 
 , 289 n.7,
 
 130 S.Ct. 1396
 
 ,
 
 176 L.Ed.2d 225
 
 (2010) ;
 
 see also
 

 infra
 
 note 11.
 

 Although my colleagues state
 
 noscitur a sociis
 
 "is 'often wisely applied where a word is capable of many meanings,' " Majority Op. at 218 n.12 (quoting
 
 Jarecki v. G.D. Searle & Co.
 
 ,
 
 367 U.S. 303
 
 , 307,
 
 81 S.Ct. 1579
 
 ,
 
 6 L.Ed.2d 859
 
 (1961) ), the Supreme Court's analysis is more nuanced. While the Court has relied on the canon when the terms share "a[ ] comparable core of meaning,"
 
 Wilson
 
 , 559 U.S. at 289 n.7,
 
 130 S.Ct. 1396
 
 , it has cautioned against it if to do so would "rob" any term "of its independent and ordinary significance,"
 

 id.
 

 at 288
 
 ,
 
 130 S.Ct. 1396
 
 (internal quotation marks omitted) (quoting
 
 Reiter
 
 , 442 U.S. at 338-39,
 
 99 S.Ct. 2326
 
 ). Indeed, the Court has rebuked lower courts-including our Circuit-that apply the canon haphazardly without reference to its precedents.
 
 See
 
 id.
 

 Thus, as the majority notes, the Court has relied on the canon to interpret the phrase "exploration, discovery, or prospecting." Before doing so, however, it noted that the words in that phrase had a common "core of meaning" and that the canon would not "rob" any term "of its independent and ordinary significance."
 

 Id.
 

 at 288-89 & n.7,
 
 130 S.Ct. 1396
 
 (quoting
 
 Reiter
 
 , 442 U.S. at 338-39,
 
 99 S.Ct. 2326
 
 );
 
 see also
 

 Jarecki
 
 ,
 
 367 U.S. at 307
 
 ,
 
 81 S.Ct. 1579
 
 (engaging in this analysis). By contrast, the Court has refused to apply the canon to "congressional, administrative, or GAO sources" because the terms in the list were not "completely harmonious."
 
 Wilson
 
 , 559 U.S. at 288,
 
 130 S.Ct. 1396
 
 (alteration omitted).
 

 Noscitur a sociis
 
 thus is "not an invariable rule" that we must resort to in every instance.
 
 Russell Motor Car
 
 ,
 
 261 U.S. at 519
 
 ,
 
 43 S.Ct. 428
 
 . Nor is it in play here, as the terms in § 2680(h) are not synonymous and share no core meaning.
 
 See
 

 Wilson
 
 , 559 U.S. at 289 n.7,
 
 130 S.Ct. 1396
 
 .
 

 These definitions also do not shed light on § 2680(h) as a whole because the subsection refers to "
 
 investigative
 
 or law enforcement officers."
 

 Even if the Transportation Security Act were less straightforward in this context, it does not control the interpretation of § 2680(h) because the former postdates the latter.
 
 See
 

 McQuiggin v. Perkins
 
 ,
 
 569 U.S. 383
 
 , 398 n.3,
 
 133 S.Ct. 1924
 
 ,
 
 185 L.Ed.2d 1019
 
 (2013) ("Congress legislates against the backdrop of existing law.").
 

 Although the Eleventh Circuit relied on statutory distinctions in
 
 Corbett v. Transportation Security Administration
 
 , it did not reference the agency's own distinctions or non-binding directives in support of its position.
 
 See
 

 568 F. App'x 690
 
 , 701 (11th Cir. 2014) (per curiam). Moreover,
 
 Corbett
 
 was an unpublished opinion, making it non-precedential and non-binding.
 
 See
 
 11th Cir. R. 36-2, I.O.P. 7 ("The court generally does not cite to its 'unpublished' opinions because they are not binding precedent. The court may cite to them where they are specifically relevant to determine whether the predicates for
 
 res judicata
 
 , collateral estoppel, or double jeopardy exist in the case, to ascertain the law of the case, or to establish the procedural history or facts of the case.").
 

 My colleagues claim "the fact that traditional criminal law enforcement officers may also have occasion to perform administrative searches ... in no way casts doubt on the textual and historical reasons to believe that § 2680(h) and § 3724 exclude from their reach those who perform only administrative searches." Majority Op. at 222 n.19 (emphases omitted). But as noted earlier, § 2680(h) provides no textual basis to exclude administrative searches from its ambit, and § 3724 makes no distinction between administrative searches and other law enforcement functions. Because neither provision explicitly distinguishes the two, we should disdain doing the same, as, among other things, we lack the authority to do so.
 

 Other provisions support my conclusion. Like Title 31, Title 19 contains a section that allows the Treasury Secretary to settle intentional tort claims brought against "an investigative or law enforcement officer (as defined in section 2680(h) of [T]itle 28) who is employed by the Customs Service...."
 
 19 U.S.C. § 1630
 
 . Elsewhere, though, the statute allows Customs officers to "inspect[ ]" "[a]ll merchandise and baggage imported or brought in from any contiguous country," essentially giving them the authority to conduct searches that resemble TSA screenings.
 

 Id.
 

 § 1461;
 
 see also
 

 19 C.F.R. § 162.6
 
 ("All persons, baggage, and merchandise arriving in the Customs territory of the United States from places outside thereof are liable to inspection and search by a Customs officer....");
 
 United States v. Hill
 
 ,
 
 939 F.2d 934
 
 , 936 (11th Cir. 1991) (noting "[c]ustoms agents may conduct suspicionless searches...."). Nowhere does the statute immunize such searches from liability. And it does not distinguish between those searches and other traditional criminal enforcement activities.
 

 The majority nonetheless portrays
 
 Bunch
 
 as corroborating its holding because "it offered, as examples of the types of searches covered by the proviso, searches incident to arrest, protective sweeps, and searches conducted pursuant to the automobile exception ...-
 
 i.e.
 
 , searches conducted by criminal law enforcement officers." Majority Op. at 224 (internal citation omitted). This account of
 
 Bunch
 
 hyperfocuses on an isolated string cite in the Court's opinion,
 
 see
 

 Bunch
 
 ,
 
 880 F.3d at 945
 
 , while ignoring its ultimate conclusion,
 
 see
 

 id.
 

 at 943
 
 (holding an
 
 inspection
 
 performed by a
 
 chemist
 
 could be enough to trigger liability for malicious prosecution under § 2680(h) ).
 

 Contrary to the majority's assertions, the Seventh Circuit did not emphasize the chemist's criminal law enforcement duties. Indeed, the word "criminal" never shows up in this portion of its discussion.
 
 See
 

 Bunch
 
 ,
 
 880 F.3d at 943
 
 . Although the Court did mention Title 18 of the U.S. Code, it observed the chemist's duties stemmed from Title 27 of the Code of Federal Regulations.
 
 See
 
 id.
 

 ("The Secretary had authority to promulgate regulations to carry out these powers, ... and he did so in 27 C.F.R. Part 55.... The regulations authorized '[a]ny ATF officer' to 'inspect the site of any accident or fire in which there is reason to believe that explosive materials were involved.' " (third alteration in original) (internal citations omitted) (quoting
 
 27 C.F.R. § 55.31
 
 (1995))).
 

 The Government argued in
 
 Bunch
 
 that the chemist-defendant was not a law enforcement officer because he "work[ed] primarily in a laboratory analyzing physical evidence gathered by law enforcement agents ... and provide[d] technical assistance to law enforcement agents...." Gov't Br. at 24,
 
 Bunch v. United States
 
 , No. 16-3775 (7th Cir. May 3, 2017). As noted, the Seventh Circuit did not adopt this reading of the proviso. Nor did it accept that the chemist's job responsibilities barred him from being an officer included within the proviso.
 

 Under the Westfall Act,
 
 28 U.S.C. § 2679
 
 (d), the Government may deny that an employee was acting within the scope of her employment and thus allow a plaintiff to proceed against the employee in state court,
 
 see
 

 Armstrong v. Thompson
 
 ,
 
 759 F.Supp.2d 89
 
 , 96 (D.D.C. 2011) (calling this a "denial of a Westfall certification"). The Government's decision to deny Westfall certification is largely within its discretion.
 
 See
 
 Corrected Tr. of Oral Arg. at 30:16-22. Neither the Government nor the District Court denied Westfall certification to the TSOs in this appeal.